## PEOPLE *v.* SMITH.

1. CRIMINAL LAW—STATUTORY RAPE—INSTRUCTIONS.

    In a prosecution for statutory rape, it was not error for the court to refuse to give respondent's request to charge as to penetration and reasonable doubt, where every element contained in the 'request was fully covered by the general charge.

2. APPEAL AND ERROR—TRIAL—SAVING QUESTIONS FOR REVIEW.

    Where, in such prosecution, the court permitted the jury to return into court and have the stenographer read all the testimony of the prosecuting witness, without having submitted also the testimony of the respondent, who made no request to have his testimony read, and where no exception was taken to the action of the court, no question is presented to this court for review.

3. CRIMINAL LAW—APPEAL AND ERROR.

    Where the trial court submitted the disputed question of fact to the jury under a charge extremely full and fair to the respondent, and this court is unable to discover any error in the trial, it cannot disturb the verdict for conviction, notwithstanding the improbability of the story told by the complaining witness.

Exceptions before sentence from Charlevoix; Mayne, J. Submitted June 15, 1916. (Docket No. 130.) Decided July 21, 1916.

Glenn Smith was convicted of statutory rape. Affirmed.

*Rollie L. Lewis,* Prosecuting Attorney, for the people.

*Harris & Ruegsegger,* for respondent.

BROOKE, J. Respondent was convicted of having committed the crime of statutory rape upon the person of one Pauline Cutter, who was 14 years of age at the time of the commission of the alleged offense. Upon the trial the girl, Pauline, testified in part as follows:

"When I got over to Glenn Smith's, I went into the house and sat down and read there. George Goodrich came in and built the fire for dinner. Then George went out of doors. I was on the lounge in the front room. George was out by the woodpile fixing a bicycle. Then Glenn came in and sat down in a chair there, talking with me about the dance the night before. Then he came over and laid down beside me on the couch. Then he got on top of me and pulled up my clothes. I was pulling them down with one hand. He was holding onto the other hand. Then we had sexual intercourse. I resisted. I tried to get out. After we had this sexual intercourse, he got up off me and went out of doors, and I got up and went into the dining room. Then George Goodrich came in and put the dinner on. We ate dinner and I went to school in the afternoon. Glenn came in to dinner with us."

Respondent was a young man 25 years of age. He went upon the stand in his own defense, and flatly denied having had carnal knowledge of the girl, Pauline, or at any time having taken indecent liberties with her person. He was able to produce some evidence tending to corroborate his statement that, at the

time when the offense is alleged to have been commited, he was asleep upstairs in the house in which the witness Pauline claimed to have been ravished; he likewise produced several neighbors who had known him for many years who testified to his previous good character. The testimony of the girl Pauline stands absolutely without support in the record.

The first three assignments of error relate to rulings of the court relative to the admission or exclusion of evidence. Though touched upon in the brief, they were not discussed in the oral argument, and we think them without merit.

The first assignment refers to the overruling of the respondent's objection to the question: "Did Glenn put his arms around you and kiss you that night?" After some hesitation and repeated questioning, an answer in the affirmative was elicited from the witness. It is urged that the course of examination indicates that the witness was intimidated and therefore gave the answer desired by the prosecutor. The whole matter becomes insignificant in the light of the evidence given by respondent, who frankly testified that, as the brother of the foster mother of the girl Pauline he had frequently kissed her.

The fourth assignment relates to the refusal of the court to grant the following request:

"Before you can find the defendant guilty of rape you must be satisfied beyond a reasonable doubt that the private, male organ of the defendant penetrated the private part of Pauline Cutter at the time and place she has described; and I charge you that the only evidence of such penetration is her testimony that she then and there had sexual intercourse with the defendant; and, while the term 'sexual intercourse,' as commonly used, includes penetration and copulation, yet you must be satisfied beyond a reasonable doubt that this witness, when she used the term, used it with full knowledge of its real significance; and in determining her knowledge and understanding of the term,

you must consider her age, environment, and education, and the fact that she had advanced only to the seventh grade in the rural public schools, to decide whether or not she meant by the use of this term that the private, male organ of the defendant entered her private part. And unless you find that by the use of this term she meant that there was actual penetration as I have described, then, under the evidence in this case, you cannot find the defendant guilty of rape."

In lieu of granting the request as presented, the court charged the jury as follows:

"I will now charge you in relation to the term 'sexual intercourse' used by the complaining witness. She says she is a girl of 14 years of age at this time—she claims she will be 15 in March next. She made use of the term sexual intercourse—described the offense as taking place as an act of sexual intercourse. Witnesses are usually presumed to know the English language, the use and significance of common terms and phrases, to understand them, and make use of them as they are generally and commonly understood; and yet it is always a question of fact for the jury to determine, when phrases and terms are used, whether the witness did, in fact, know and understand the terms as they are ordinarily used. And in this case it is for you to consider whether the girl Pauline Cutter actually did know and make use of the term in its usual and ordinary meaning and significance. In rape it is necessary that there should be penetration, that the male sexual organ should actually enter, penetrate the female organ; this is the sexual offense charged, and that is what is meant, ordinarily, by the term sexual intercourse—the penetration of the female or sex organ by the male organ or sex organ of the man, and in rape as it was formerly understood there must be emission. These two things must concur, but, in the offense charged here, under this statute it is necessary that there should be penetration of the female organ by the male organ to constitute the offense as charged —of rape—and that is what is ordinarily meant by the term intercourse, sexual intercourse, and in this case it is for you to say, considering the age of the witness, her education, her bringing up to this time,

her environment or surroundings, it is for you to say when, on the witness stand, she testified that she had sexual intercourse with Glenn Smith on the 7th day of September last—it is for you to say whether there was actual penetration; as, under the statute, to make out the claim of rape there must have been penetration as I have made use of the term, the entering of the female sex organ by the male sex organ. Penetration is all that is necessary to show in order to constitute this offense. The girl, Pauline, has been before you, you have heard her testimony, you have been able to ascertain and determine her degree of intelligence and her use of the words and phrases in the English language; it is for you to say whether, when she made use of the term, sexual intercourse, she meant such a use of the term as is generally understood by the use of that phrase as I have defined it. If she did, then you should consider that she meant to make use of that phrase in its full significance; if she did not so make use of the term sexual intercourse, then there is absolutely no testimony in this case that the respondent is guilty of the offense charged. If, when she made use of the term sexual intercourse, she understood the term and used it in its ordinary significance, then there is testimony in the case from which you might find the respondent guilty in connection with the other testimony in the case, if you believe it."

It is strenuously urged on behalf of the respondent that the instruction as given did not cover the request, because it failed to instruct the jury that they must find *beyond reasonable doubt* that there had been "penetration." A reading of the charge shows that the court very carefully instructed the jury as to the necessary ingredients of the crime charged, as well as to the presumption of innocence, and as to what constituted reasonable doubt. We are of the opinion that every element contained in this request, conceding it to have been proper, was fully covered by the general charge.

The fifth assignment is not discussed.

The sixth assignment is based upon the action of

the court in permitting the jury, after retiring, to return to court and have the stenographer read all the testimony of the witness, Pauline Cutter, without having submitted also the testimony of the respondent. The record discloses that the testimony of this witness was read by order of the court at the request of the jury, that no request was made on behalf of the respondent to have his testimony read to the jury, and that no objection was made or exception taken to the action of the court.

The seventh assignment of error relates to the same matter as the fourth and has been sufficiently discussed thereunder.

The eighth assignment is not discussed.

On behalf of the respondent, both in brief and in oral argument, counsel strongly urges the extreme improbability of the truth of the story told by the complaining witness. It is pointed out that, while the crime of rape is difficult to prove, it is even more difficult to refute, and that, because of the justifiable, popular abhorrence of the crime, there is always great danger that one charged with its commission, though innocent, may be convicted. It is argued that the life of this young man, hitherto of unblemished reputation, should not be ruined by a prosecution based upon the wholly uncorroborated statement of a comparatively ignorant girl of 14, who had at one time been an inmate of the Industrial School for Girls at Adrian.

All that is said in argument upon this point may well be admitted, but it is an argument to be addressed rather to the jury or to the trial court, upon a motion for a new trial, than to the appellate court. This court is properly concerned only with the determination of legal questions, raised by appropriate assignments of error. The trial court submitted the disputed question of fact to the jury under a charge extremely full and fair to the respondent. A jury of his peers have pro-

nounced him guilty, and, being unable to discover any error in the course of the trial, we cannot disturb their verdict.

The case is remanded, with instructions to the court below to proceed to judgment.

STONE, C. J., and KUHN, OSTRANDER, BIRD, MOORE, STEERE, and PERSON, JJ., concurred.