THE PEOPLE v. REUBEN MILLER.

*Criminal law—Assault with intent to do great bodily harm—
Evidence.*

1. The intent of a respondent to do great bodily harm less than
the crime of murder may be inferred from the act itself.

2. In a prosecution for assault with intent to do great bodily harm
less than the crime of murder, the testimony tended to show
that the respondent kicked the complaining witness, as he was
falling from the effects of a blow administered by the
respondent, fracturing one of his ribs and injuring his
kidneys, and that the act of kicking was accompanied by the
threat that respondent "would kick his G——d d——d liver
out;" which evidence is held sufficient, if believed, to warrant
a conviction of the offense charged.

3. The fact that the respondent did not intend to fracture a rib or
injure the kidneys will not avail to reduce the offense to
assault and battery. If his intent was to injure the assaulted
party seriously in one vital organ, and he missed it, and
injured another, the intent to do great bodily harm existed,
and could be inferred from the fact that respondent intended
to inflict it, but in a different portion of the body of the
person assaulted.

Error to Jackson. (Peck, J.) Argued May 5, 1892.
Decided May 13, 1892.

Respondent was convicted of assault with intent to do
great bodily harm less than the crime of murder, and
sentenced to imprisonment in the State prison for one
year. Judgment affirmed. The facts are stated in the
opinion.

*John M. Corbin,* for respondent, contended:

1. The jury should have been instructed that, under the undisputed
evidence, the respondent could not be found guilty of the
offense charged; citing *People v. Ross,* 66 Mich. 94; *People v.
Comstock,* 49 Id. 330; *People v. Deitz,* 86 Id. 419.

2. The felonious intent is specifically made an ingredient of the statute, and hence this intent is the gist of the offense, and must be shown by such evidence as, if uncontradicted, would fairly authorize it to be presumed beyond a reasonable doubt; citing *People v. Getchell,* 6 Mich. 504; *People v. Petheram,* 64 Id. 277.

3. When the intent is specifically made, by statute, an ingredient of the crime, or where it is made essential to enable the jury or court to determine the degree of the crime, or to fix the character and amount of the punishment with which its commission is to be visited, such intent must be affirmatively shown, and cannot be established by those ordinary legal inferences which were sufficient at the common law to establish the general crime, but at which the statute, by dividing the crime into decrees, especially aimed; citing Tiff. Crim. Law (3d ed.), 428; *People v. Getchell,* 6 Mich. 504; *Shannon v. People,* 5 Id. 71; *Durant v. People,* 13 Id. 351; *Wilson v. People,* 24 Id. 410; *People v. Chappell,* 27 Id. 486.

*A. A. Ellis,* Attorney General, and *J. A. Parkinson,* Prosecuting Attorney, for the people.

MORSE, C. J. The respondent was convicted of assault with intent to do great bodily harm less than the crime of murder, and sentenced to the State prison at Jackson for one year.

There is no doubt that Miller committed an assault and battery, and without provocation, upon one John Dickinson, at Springport, in the county of Jackson, on the 15th day of November, 1891; but it is claimed by respondent's counsel that the testimony shows that there was no intent to do any great bodily harm in this assault; that the two men had always been friendly, no previous malice existing in respondent's mind towards Dickinson, and there were no threats preceding the attack, and no motive shown why respondent should have contemplated doing Dickinson any serious or permanent injury. It is contended that the blow and the kick were one act, and done without premeditation, in a moment of impulse and excitement. The court was requested to charge the jury that respond-

ent could not be convicted of any higher crime than assault and battery.

It appears from the evidence that Miller was a drinking man, and in the habit of getting intoxicated; that his wife had left him once or twice on account of his drinking, and returned to him again. On the day of the assault upon Dickinson respondent was about to tap a barrel of cider, and his wife told him that, if he did, she should go away. He opened the cider barrel, and she left. In the evening, somewhat under the influence of drink, he started in a buggy, with a young man by the name of Eckert, to find his wife. He went to several places, and finally found her at Dickinson's, and demanded that she go home with him, which she did. Before she went away with him he had a talk with Dickinson, in which he blamed the latter for harboring his wife. His wife, who was in bed, got up, dressed herself, and went out of doors, and talked with Miller. He was very angry at her, and was quite profane and abusive in his language. The wife went back into the house, and Dickinson stepped out, thinking, as he said, to quiet respondent. According to Dickinson's testimony, he had no more than met Miller, when respondent struck him with his closed fist, knocking him down, and kicked him as he was falling down, saying, "I will kick your G—d d——d liver out." He then turned around, and broke the window with his hand. Dickinson got up, and went over to a neighbor's, where he fainted away from his injuries. One of his ribs was fractured, and his kidneys injured, and he was sick for some time thereafter.

If it were not for the language used and accompanying the act of kicking, we should be inclined to accept the theory of defendant's counsel that the evidence would

not warrant the conviction in this case of the higher crime charged. But the language used, and the place where the blow from the foot struck the body of Dickinson, were evidence tending to show that the respondent intended to kick Dickinson in a vital spot, and where a kick might do serious and permanent injury. It is true that the question in a case like this is not what was the effect or result of the blow, but what was the intent with which it was given; but here the respondent intimated that he desired to kick the liver out of Dickinson, and the blow was evidently aimed at a part of the body where a kick would naturally do great bodily injury, if sufficient force was used.

The court correctly instructed the jury that the result of the blow or kick should not be used as evidence to show the intent with which such blow or kick was given, unless they found, beyond a reasonable doubt, that such result was contemplated by Miller when he made the assault.

"And, in determining whether those results were contemplated, you should aid your judgment by considering the means employed and the manner of their use,—whether they would naturally lead to such results,—so as to see whether a person using those means, and using them in the manner and under the circumstances that Miller used them, would naturally contemplate, and so intend, the consequences which naturally and reasonably followed them. Of course, the mere fact (if it is a fact) that Dickinson's rib was broken or his kidney injured would not necessarily show that Miller in committing the assault intended to accomplish those results, and the fact of the result should not be used as evidence to show the intent with which the assault was committed, unless you find from the evidence, and beyond a reasonable doubt, that they are natural and reasonable results following the use of such means, and the manner of their use, as they were actually employed by Miller at the time. If you find that the results actually following the

assault were not such as would have been reasonably contemplated by a person using such means, then you should not consider the results of the assault as having any tendency to show the purpose or · intent with which the assault was made."

The court was not in error .in modifying defendant's request that the jury must find beyond a reasonable doubt what particular bodily harm was intended to be inflicted upon Dickinson. The court said:

" With reference to this subject I charge you that, to constitute the offense charged in the information, the defendant must have intended to do Mr. Dickinson great bodily harm,—serious and permanent bodily injury,—and he must have intended to do such serious and permanent bodily injury as was within the natural result of the means he employed, and his manner of using those means. But he need not have contemplated with mathematical precision or intended to do only the precise thing which actually followed his assault; as, if one rib was broken, and that the eleventh, he need not necessarily have intended to break the eleventh rib, and that alone, nor need he have necessarily contemplated alone the breaking of the eleventh rib and the injury to the kidney, but he must have had in contemplation an injury of that general character, and an injury serious and permanent; otherwise he could not be said to have intended to have done great bodily harm, as is charged in this case.",

The charge of the court was a very fair one, and we do not think it necessary to notice all the assignments of error to it separately. These assignments are mostly based on the main proposition that, under the evidence on the part of the people, there was no greater crime than assault and battery of which respondent could be convicted.

It is claimed that the court permitted the jury to find the intent of the respondent to do great bodily harm by drawing inferences from the result of the assault, while the contention of respondent's counsel is that this intent

must be affirmatively shown, and cannot be established by the ordinary legal inferences which at common law might be used to establish the general crime. It was held in *People v. Ross,* 66 Mich. 96, that where an injury was with a stick, which hit where it was aimed at, and the intent was shown only by this act, such intent could not well be stretched beyond the result of the blow. It is error to suppose that, in a case like this, the intent cannot be inferred from the act itself. If a man should deliberately shoot at another, and wound him, the law would infer from the act alone, without any other proof, that he shot with intent to kill and murder. If such was not the intent, some facts would have to be shown qualifying this act. In this case the respondent says, "I will kick your G——d d——d liver out," and accompanies the threat with a kick evidently aimed at that portion of the body in which lie the liver and other vital organs. The place where the blow landed, and the result, as showing the force employed, could legitimately be used to infer the intent. The blow falls where it injures a rib and the kidneys. The fact that he did not intend to break a rib or injure the kidneys does not help the respondent. If he meant, by his kick, to injure Dickinson seriously in one vital organ, and missed it, and injured another, the intent to do serious bodily harm existed, and could be inferred from the very fact that he intended to do such harm, but in a different portion of the body of the person assaulted. The intent to do serious bodily harm in this case might well be inferred from the threat and the kick together, and we cannot see that the circuit judge, by his charge, permitted any unreasonable or illegal inferences to be drawn from the testimony.

It was claimed by the respondent, and he was corroborated in this by the man with him, that he struck Dickinson with the flat of his hand, and not with his

clenched fist, and that he did not kick him at all. The court charged the jury that unless they found the respondent kicked Dickinson, while he was down or as he was falling, they must acquit him of the offense of assault with intent to do great bodily harm less than the crime of murder. The respondent desired a further charge that if the jury found that respondent struck Dickinson with the flat of his hand, instead of his fist, that would be a circumstance tending strongly to show and absence of intent to do great bodily harm. This request was not given. Under the circumstances of the case it was not error to refuse it. The injury threatened was a kick, and the blow with the hand, whether shut or open, had but little, if any, bearing upon the intent; and the intent to do great bodily harm could not be inferred, as the court plainly told the jury, without the kick.

The judgment must be affirmed, and an order will be entered remanding respondent to the custody of the sheriff of Jackson county, to convey him to the State prison, in accordance with the sentence of the court below; the time of imprisonment to be one year from the date of the affirmation of the judgment in this Court.

LONG, GRANT, and MONTGOMERY, JJ., concurred. McGRATH, J., did not sit.