PEOPLE *v.* COLLINS.

1. HOMICIDE—DEATH—PRESUMPTIONS—EVIDENCE.
   A charge, in a prosecution for murder, correctly advised the jury that death resulting from an assault, in the absence of any proof to the contrary, is presumed to be felonious—either murder or manslaughter—and that if it resulted from wounds inflicted by a deadly weapon, malice is presumed.

2. SAME—TRIAL—INSTRUCTIONS TO JURY.
   Nor did the court err in stating to the jury the claim of the prosecution on the question of malice aforethought.

3. SAME—HARMLESS ERROR.
   But after a conviction of manslaughter any possible error in that respect was harmless.

4. CRIMINAL LAW—TRIAL—JURORS—CITIZENS—QUALIFICATIONS.
   Under the presumption that a juror is qualified, a juror who came to the United States from Canada in 1863 and took out full papers in 1864 will be deemed to comply with the statutory requirements affecting the upper peninsula of this State. 1 Comp. Laws, §§ 319, 344, 352.   Art. 3, § 1, Const. 1909.

5. SAME—ARGUMENT OF PROSECUTING ATTORNEY.
   The evidence was sufficient to justify the prosecuting attorney in arguing that respondent received certain bruises on his face by falling from his buggy, where it appeared that certain witnesses saw respondent at the time of the shooting and there were no bruises on his face, and that he subsequently on the same day fell from his buggy head foremost.

Error to Chippewa; Steere, J.   Submitted April 20, 1911.   (Docket No. 119.)   Decided May 8, 1911.

Charles Collins was convicted of manslaughter. Affirmed.

*L. C. Holden* and *M. M. Larmonth*, for appellant.

*Merlin Wiley*, Prosecuting Attorney, for the people.

STONE, J.   The respondent was convicted of manslaughter upon trial under an information charging him with having killed and murdered one Edward Winters. There was evidence to the effect that on the day in question respondent, who was a soldier in the United States army, had been downtown in the afternoon drinking at various saloons.   Early in the evening he had hired a rig from Louis Belanger, and was driving it.   He drove up to the Montreal House and stopped, and there met Winters. A witness testified:

"They appeared to have angry words.   They continued about five or six minutes.   Winters said:   ' Come down to the Club, and I will settle it.'   They walked a few feet in the direction of the Club.   Collins turned back and said ' To hell with you and your Club.   You're not going to get me down there to lick me,' or something like that, and then stepped back.   Winters kept following him up and he says, ' Keep · away from me.   You're a bigger man than me,' or ' better man than me.   I want nothing to do with you.'   Collins then got into the rig and turned the corner towards the fort.   Winters stood out there, watching him for a few minutes, and then went into the saloon. When Collins went away in the rig, he says:   ' Wait there until I come back, you son of a bitch, and I will get you,' and then drove away."

Respondent was gone some 12 or 15 minutes.   There was no evidence as to where he went, or what he did while away.   When he came back, he stopped the rig, got out, and walked over toward a little store, known as Dago John's, located just east of the Montreal House, on Spruce street, stopped for a few minutes, and talked with Nellie Bowers, one of the witnesses for the prosecution.   He had his hands in his overcoat pocket, and then started towards the saloon door.   The Bowers girl testified that she told him not to go in there; he might get hurt.   He asked her what she said, and she repeated it, but she did not know whether he understood it or not.   There was no testimony farther than that, that he knew Winters was in there. He started into the door, and just as he got there, as he

opened the door, or as the door was opened from the inside, he met Winters. The assault then took place, and which party made the first assault was not made clear by the evidence. The respondent fired three shots, the first apparently going through the door, over the bar to the right, barely missing the bartender (who dropped behind the bar), and burying itself in the back bar. The other two shots lodged in Winters' body, one in the arm and the other in the abdomen. Winters came out of the door, and said: "I am shot." He was staggering, and groaned.

Respondent went in through the barroom to the back door, and stopped there for an instant. No cut or bruise was then observed on his face. He turned and came back out of the front door bareheaded. He picked up a hat off the sidewalk, put it on, found it was not his, and threw it down again. His hat was afterwards found lying on the step or sidewalk in front of the Montreal House. He drove away from there, and that was the last seen of him until he was taken in custody half or three-quarters of an hour later, save that two boys brought the rig to the police station from the south side of the water tower, and testified that the man who was driving it had collided with another rig, and had been thrown out, and seemed to land head foremost, and had gone away and left the rig. When respondent came to the post, where he was arrested, his face was severely cut and bruised. Winters died four days after the shooting from the effects of the wounds received from respondent.

The defense in the case was that respondent acted in self-defense; and it was claimed that Winters was armed with a "billy or black jack," which he had been known to carry, and that he made an assault therewith on the respondent, and there was some evidence tending to support the claim, although as to who made the first assault was not made clear. The subjects of murder of the second degree and of manslaughter were submitted to the jury in a very carefully worded and well-considered charge fully covering the case in all of its aspects.

The case is here upon a bill of exceptions. There are 13 assignments of error. All but two relate to the charge or refusal to charge. One relates to the alleged disqualification of a juror, and one to the language used by the prosecuting attorney in his argument.

By the third assignment of error the following language of the charge is claimed to be erroneous:

" And it is the law that death resulting from an assault, in the absence of any proof to the contrary, is presumed to be felonious—either murder or manslaughter. And where the death is shown to have resulted from the use of a deadly weapon, in the absence of any proof to the contrary, in the absence of any testimony in relation to that, the presumption is that the death was inflicted with malice—with malice aforethought in causing the death, in the assault."

We are of opinion that there was no error in this part of the charge. That it stated the rule correctly will appear by reference to the cases of *People* v. *Potter*, 5 Mich. 1–8 (71 Am. Dec. 763); *Wellar* v. *People*, 30 Mich. 16–20; *People* v. *Miller*, 91 Mich. 644 (52 N. W. 65); *People* v. *Wolf*, 95 Mich. 625 (55 N. W. 357). The jury had already been instructed as to the burden of proof; that it is the law that the burden of proof was upon the prosecution to satisfy the jury beyond a reasonable doubt that the killing was not in self-defense; that no reasonable belief existed in the respondent's mind, at the time, that he was in great bodily danger, as the facts and circumstances then appeared to him; that it was a question of fact for the jury whether or not at the time of the shooting respondent was assaulted, and, being assaulted, as the circumstances then appeared to him, did honestly believe that he was in danger, and that it was necessary to do what he did to protect himself from great bodily harm.

By the eighth assignment of error, the following language of the charge is complained of:

" On the part of the prosecution, it is claimed that on the occasion in question this defendant, Charles Collins, having had an altercation with the deceased, his passion

being aroused, prepared in some way. It is claimed that he equipped himself and came back, went to where he was informed the deceased was, met him, and killed him."

It will be noted that the court here simply stated to the jury the claim or position of the prosecution. That such was the claim of the prosecution in the trial of the case is not denied. There was evidence that there had been an altercation, or dispute with anger, between the parties; that respondent had refused to go with Winters as he was a bigger man than he; that respondent when he went away said, "You wait there and I will get you," or "I will come back and get you;" that he was gone 12 or 15 minutes, and returned with a revolver in his possession, and at once sought out Winters, when the assault took place. We think that the prosecution might well make the claim it did, and that the court did not err in calling attention to it. We think the jury would have been justified in inferring from the evidence that respondent went away for the purpose of arming himself, under all of the circumstances; in fact, that it would be almost impossible for a reflecting or intelligent mind to come to any other conclusion. The claim and evidence upon this point had a bearing upon the question of malice.

As the respondent was convicted of manslaughter only, and acquitted of murder, that part of the charge, if error (and we do not think it was), would have been harmless error. *People* v. *Farrell*, 146 Mich. 264 (109 N. W. 440); *People* v. *Sharp*, 163 Mich. 79 (127 N. W. 758); *State* v. *Winter*, 72 Iowa, 627 (34 N. W. 475).

The twelfth assignment of error relates to the action of the court in overruling respondent's challenge to talesman Lyman Beach, who was called as a juror, and stated that he had never taken out his second papers, and become a full citizen. Just what the juror did say on his *voir dire* was that he was born in Canada, had lived in this country since 1863, took out full papers in 1863 or 1864 in Marine City; that he got only one paper, and could not say whether he was a full citizen or not.

It will be presumed that the jurors are qualified, and the burden of proving the existence of a disqualification is upon the party alleging it. In this State these qualifications are expressly prescribed by statute. Such qualifications may be changed from time to time. 24 Cyc. p. 496. Under our statutes a juror and a talesman must have the qualifications of an elector. See sections 319, 344, 352, 1 Comp. Laws. By Art. 3, § 1, of the Constitution of this State, it is provided that:

"Every male inhabitant of foreign birth who, having resided in the State two years and six months prior to the eighth day of November, eighteen hundred ninety-four, and having declared his intention to become a citizen of the United States two years and six months prior to said last named day * * * shall be an elector and entitled to vote."

For aught that appears here, this man may have come to this country under 18 years of age, and may have taken his full papers at one time, after five years' residence, under the naturalization laws then in existence, and thus have been a full citizen. At all events, he was an elector, and was thus qualified as a juror. *People* v. *Scott,* 56 Mich. 154 (22 N. W. 274); *People* v. *Rosevear,* 56 Mich. 158 (22 N. W. 276); *People* v. *Considine,* 105 Mich. 149 (63 N. W. 196). There is no merit in this assignment of error.

Respondent's thirteenth assignment of error shows that during the argument of the prosecuting attorney he said:

"Where did Collins get that bruise on the head? I will tell you. The evidence shows that he fell out of the rig on his right side. That is where he got it."

To which statement respondent by his counsel excepted. At the close of the argument, and before the jury were charged, the above statement was called to the attention of the court by the defense, and its correction asked for, on the ground that it was not shown by the evidence. The prosecuting attorney refused to concede that he was wrong. The court said it would leave the matter to the

jury, if there was a dispute as to what the testimony really was, which ruling was duly excepted to.  There was evidence from a number of witnesses who were in the saloon at the time of, and immediately after, the shooting, that they saw respondent, and did not observe any injury upon his face.  Later, after he had been thrown headlong from the rig, there was such injury. We are of opinion that the argument of the prosecuting attorney was justified by the evidence, and that it might be fairly inferred therefrom that the injury to his face was received by the respondent after he left the scene of the shooting.

We have thus carefully gone over all of the points urged by respondent's counsel at the hearing.

Other errors assigned which we have not specifically treated have all received careful consideration, and we find no error in the record.

The conviction and judgment of the circuit court must stand affirmed.

MOORE, MCALVAY, BROOKE, and BLAIR, JJ., concurred.