HORACE RALPH MCCOLLEY v. STATE OF NEBRASKA.

FILED MARCH 7, 1928. No. 26124.

*John M. Macfarland,* for plaintiff in error.

*O. S. Spillman, Attorney General,* and *Lloyd Dort, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY and HOWELL, JJ.

Goss, C. J.

Plaintiff in error, hereafter called defendant, was convicted of an assault with intent to rape a 17-year-old girl.

The first error assigned and argued in the brief of defendant is that Julius A. Mauss, one of the jurors, was of unsound mind and was a nonresident of the state. No record was preserved in the bill of exceptions showing what answers were given by the juror in his *voir dire* examination. The question was first raised in the motion for new trial and his qualifications as to mind and residence were then presented by oral testimony and by affidavits. Some of these affidavits indicate that on his *voir dire* examination he gave his residence as Omaha. His name could not be put on the jury list unless he had voted in one'of the precincts of the county, as the names of jurors are taken from the lists of electors who actually voted at the last election before the names of electors are certified by the election commissioner to the jury commissioner; from this list the jury commissioner selects names of those eligible for jury service. On the evidence and argument of the motion for a new trial, the court held that the juror was a resident of the county. This was a matter within the discretion of the court and to be decided by the court. We find no abuse of that discretion. On a motion for a new trial on the ground that one of the jurors was not a resident of the county, the burden is on the party alleging the disqualification of the juror. Doubtless, if the juror was sane, he had a right to select his actual residence in Douglas county, to register and vote and to serve as a juror there. On the question of the mental competency of the juror, evidence both orally and by affidavits was also taken on the hearing of the motion for new trial. The defendant introduced a certified copy of an order of the district court for Pottawattamie county, Iowa, dated September 4, 1918, appointing Minnie Cowle "permanent guardian of the property" of Julius A. Mauss. There is nothing in the record to show that she was guardian of the person. John L. Chew, an Omaha lawyer, called as

a witness and asked if he was guardian of Mauss, answered: "I am in joint control with his duly appointed guardian, Minnie Cowle." So, assuming that he was duly appointed, he was one of the guardians of the property only. It does not appear that Mauss was ever under guardianship as to his person. Mr. Chew expressed the opinion that Mauss was crazy. The eleven other jurors told by affidavit of their association with Mauss as a juror and each expressed the opinion that he was of sound mind. The affidavit of Dr. Howard L. Updegraff states that he last examined Mauss March 28, 1927 (which was 20 days after the verdict), and that he was of the opinion, from this and previous examinations he had made during the last year, that Mauss was of unsound mind and incompetent. Dr. G. Alexander Young expressed the opinion by affidavit that Mauss had a very fair average of intelligence "for a man of his age and social status," that the guardianship over his property should be lifted, and that he was capable of handling his property. In this state of the evidence, and in this divided counsel of the physicians, after two trials of the cause, we are unwilling to say that the court abused its discretion in deciding that the juror complained of was of sound mind, and in refusing a new trial on account thereof. The burden of showing on a motion for new trial that a juror was not of sound mind and discretion is on the party alleging it. 35 C. J. 244; *People v. Collins,* 166 Mich. 4; *Zimmerman v. Carr,* 59 Ind. App. 245; *Ammons v. State,* 65 Fla. 166. The finding of the trial court as to the qualifications of a juror will not be set aside unless the error is manifest or unless there has been a clear abuse of judicial discretion. 16 R. C. L. 289; *Reynolds v. United States,* 98 U. S. 145; *Hopt v. Utah,* 120 U. S. 430; *Spies v. Illinois,* 123 U. S. 131; *State v. Pearce,* 87 Kan. 457; *People v. Loper,* 159 Cal. 6; *State v. Lauth,* 46 Or. 342, citing many cases.

The defendant seeks to predicate error upon the introduction of the testimony of a nine or ten-year-old girl who was shown by the state to have been picked up by

the defendant on a previous occasion, on the pretext of taking her in his car to school, and by deception to have been taken instead into the men's toilet at Fontenelle Park and solicited to gratify his sexual desires, but another witness caused the defendant to flee before he had accomplished his purpose. The defendant objected to the "girl testifying at this time for the reason that the court refused to let her testify and the court sustained all of the defendant's objections to this girl testifying during the trial of the cause heard on February 7, 1927." (The instant trial was begun March 7, 1927; the transcript showing that in a previous trial the jury was discharged on February 9, 1927, because of inability to agree on a verdict.) The court committed no error in overruling the objections to the testimony of this child on the ground assigned.

Lastly, it is argued that the facts do not show an assault on the prosecutrix but merely a solicitation. There was ample evidence before the jury to indicate that the prosecutrix was a 17-year-old girl, a graduate of the high school, and chaste; on a snowy, slushy day, December 27, 1926, she was waiting for a street car at Thirtieth and Ellison streets to go down town to do some shopping; the defendant stopped his Ford touring car within a few feet of her and asked her if she wanted to go to town; she then thought he was a chum of her brother who roomed with her brother at Lincoln, but as soon as she got in the car she saw she was mistaken; when they got to Thirtieth and Bedford streets, instead of continuing down town, the defendant turned west on the boulevard where there were no houses, and when she asked him why he did not continue toward town he answered that this was a short cut; all the curtains were on the car except the front curtain on the right side where she sat; there was no one one to hear her cry if she called; after going a few blocks he stopped the car, leaving the engine running, and solicited intercourse by its conventionally vile but colloquial name not, however, found in dictionaries; she refused and started to scream, and he said "it will go worse

with you if you yell and scream;" he got over her, lifted her and pulled her bloomers down to her knees and lay on her for some time, accomplishing some penetration; as soon as he had completed ejaculation and finished the assault, he drove toward town against her protest that she wanted to be let off right there so that she could go to the street car; he took her to Seventeenth and Dodge; she took the first street car home and told her parents without delay; they immediately called the police and a well-known doctor of high standing; the doctor responded to the call promptly; he testified she was hysterical and crying; he removed her to a hospital, put her under an anesthetic and examined her; he testified there was a spot of semen on her bloomers, that they were muddy, and that there was a partial perforation of the hymen; her bloomers and hose were found to be soiled with mud similar to that on defendant's overalls and shoes. Here was ample evidence to warrant a charge and conviction of rape. The evidence was quite sufficient to sustain the charge of assault with intent to commit rape, of which he was accused. In order to satisfy ourselves, we have gone deeper into the record than suggested by either brief or argument or than required by the rules governing review of such trials. We are of the opinion that the judgment of the trial court was right and we affirm it.

AFFIRMED.