PEOPLE v JOHNSON

1. TRIAL—INSTRUCTIONS TO JURY—APPEAL AND ERROR.

Instructions to a jury must be read as a whole where errors
regarding the instructions are alleged.

2. HOMICIDE—DEFENSES—INSANITY—IRRESISTIBLE IMPULSE—PASSION—
INSTRUCTIONS TO JURY.

An instruction to the jury in a homicide case on the insanity
defense of irresistible impulse and making a distinction be-
tween it and unbridled passion is proper.

3. CRIMINAL LAW—TRIAL—JURY ROOM—PREJUDICE.

The Court of Appeals does not condone or encourage entry into
the jury room during deliberation in a criminal case but
reversibility depends upon prejudice.

4. CRIMINAL LAW—TRIAL—JURY ROOM—INSTRUCTIONS TO JURY—
PREJUDICE.

Allowing a court stenographer to enter the jury room during
deliberation to reread instructions was not error where both
the prosecutor and defense counsel were present, where there
was stipulation both to the subject matter to be covered in the
reading and the procedure to be employed, and where the
appellant has not alleged or briefed either actual or concealed
prejudice.

5. APPEAL AND ERROR—TRIAL TACTICS.

Counsel may not sit back in ambush, later to entrap the opposite
party on a procedure to which he previously agreed.

6. HOMICIDE—MURDER—INSTRUCTIONS TO JURY—SUPPLEMENTAL IN-
STRUCTIONS—DISCRETION.

Failure of a trial court to further instruct a jury concerning the

REFERENCES FOR POINTS IN HEADNOTES

[1] 53 Am Jur, Trial §§ 537, 554.
[2] 53 Am Jur, Trial § 664.
[3, 4] 53 Am Jur, Trial § 909.
[5] 53 Am Jur, Trial § 824.
[6] 53 Am Jur, Trial §§ 570, 571.

elements of first- and second-degree murder and the distinction between the two after a juror's informal request that the court do so was not an abuse of discretion where the jury reached agreement among themselves before the judge's suggestion that he receive a formal request from the jury to reinstruct had been relayed back to the jury, and where the requested charge had been adequately covered in the original instructions.

Appeal from Oakland, Clark J. Adams, J. Submitted Division 2 March 12, 1974, at Lansing. (Docket No. 13549.) Decided May 29, 1974. Leave to appeal applied for.

David R. Johnson was convicted of first-degree murder. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *L. Brooks Patterson,* Prosecuting Attorney, and *T. S. Givens,* Assistant Appellate Counsel, for the people.

*John H. Waldeck (Kenneth A. Webb,* of counsel), for defendant.

Before: HOLBROOK, P. J., and ALLEN and VAN VALKENBURG,*_ JJ.

ALLEN, J. Defendant was charged with first-degree murder, MCLA 750.316; MSA 28.548. Upon trial by jury, defendant interposed the defense of insanity. He was found guilty of murder of the first degree and sentenced to prison for life.

March 9, 1971, the body of Leona Senkiel was found dead in the basement of her home. Her head was reduced to a pulp and stab wounds had penetrated her heart and lungs. Pieces of a broken crutch were found in the living room and a partially broken stool and bloodstained butcher knife

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

lay in the basement. Eight days later, in Miami, Florida, defendant confessed to the homicide, was extradited and returned to Michigan where he made a further oral confession. Defendant stated that he came to visit deceased, drank about half of two or three fifths of whiskey, got into an argument over work he was to do for deceased, whereupon she hit him with her crutch. He struck her with a chair, then hit her with a pipe and carried her to the basement. There, he stabbed her in the chest with a knife he obtained from the kitchen. He then drove off in deceased's 1971 Chevrolet Nova and the following day drove to Florida. Prior to trial, defendant was referred to the Center for Forensic Psychiatry for evaluation and was found competent to stand trial. Upon trial, expert testimony on the issue of insanity sharply conflicted. Defendant's mother testified that since the age of 12 defendant had been taken to a psychiatrist intermittently. Two psychiatrists stated defendant could not separate right from wrong when placed under threat or stress. In rebuttal, the people's psychiatrist testified defendant had evidence of mental disease and was in a toxic condition caused by alcohol when the violence occurred, but that defendant was not acting under an irresistible impulse.

The court instructed the jury on five possible verdicts: murder of the first degree, murder of the second degree, manslaughter, not guilty by reason of insanity, and not guilty. During jury deliberations, the jury requested a reinstruction on the possible verdicts. After considering the matter, in the presence of both counsel, the trial judge delegated the court reporter to enter the jury room accompanied by both counsel and read the five possible verdicts returnable. The trial judge declined to give additional instructions on the dis-

tinction between first- and second-degree murder when the attorneys relayed a question from a juror. Defendant's counsel raised 15 errors, of which 4 are discussed herein. The balance have been carefully considered and found to be without merit.

I.

*Did the trial court commit reversible error in instructing the jury that "[w]hen a man assaults another one with, or uses upon another a deadly weapon in such a manner that the natural, ordinary, probable use of such deadly weapon in such manner would be to take life, the law presumes such a person so assaulting intended to take life and hence had malice aforethought?"*

Counsel contends that the failure to object to the charge at the time it was given does not preclude appellate review when the charge omits a legally necessary element. *People v Liggett,* 378 Mich 706; 148 NW2d 784 (1967). Counsel asserts the missing legal element is the omission of prefatory words "without justification"[1] or "in the absence of any proof to the contrary"[2] or "suddenly without any provocation".[3]

If these instructions were to stand alone the error might well be prejudicial. But as this Court has observed before, the charge to the jury must be read as a whole. *People v Robinson,* 11 Mich App 162, 165; 160 NW2d 744 (1968). Included in the charge to the jury was the following:

"If one without just cause inflicts a wrong upon

---

[1] *People v Bourne,* 385 Mich 170, 175; 188 NW2d 573 (1971).

[2] *People v Collins,* 166 Mich 4, 7; 131 NW 78 (1911).

[3] *People v Bourne, supra.*

another, we call him malicious, so that when the kill-
ing, so that when one without legal *provocation, justifi-
cation,* or excuse intentionally kills another, we call
him a murderer. The law implies malice, and the
offense is murder.

"If on the other hand he acted from *sudden passion
caused by some great provocation,* the killing would be
manslaughter." (Emphasis supplied.)

We conclude that when read in its entirety the
charge includes the qualifying language which
defendant claims was omitted.

## II.

*Did the trial court commit reversible error in
instructing the jury that "[i]nsanity must be sepa-
rated from passion. Temporary or emotional insan-
ity, which enable a person who does not choose to
bridle his passion, and which allows it to get and
keep the upper hand just long enough to enable
him to commit an act of violence, and then sub-
side, is no defense?"*

Defendant contends this charge is particularly
damaging because defendant's medical experts es-
tablished that defendant was prone to stress and
when placed thereunder was irresistibly compelled
to commit homicide. In effect, defendant claims,
the charge amounted to an instruction that tempo-
rary insanity would be no defense.

We do not find the trial court closed the door to
a finding of temporary insanity. Again, reading the
instructions as a whole, the record discloses the
trial court stated,

"or if he had not the power to resist impulse to do the
act by reason of mental disease or insanity, that would
be an unsound mind.

* * *

"If he did know what he was doing, did he know or did he have the will or power to resist the impulse occasioned at that time? These are the questions which you should answer in determining whether or not the respondent was insane.

* * *

"The unsoundness of mind, which is a defense in a criminal action, must be the result of disease and not the result of the respondent having allowed his passions to run until they become uncontrollable."

A fair reading of the charge leads us to conclude the court did specifically instruct that irresistible impulse was a defense but properly instructed the jury to make a distinction between it and unbridled passion. We further observe that the instruction separating insanity and passion has long been accepted in Michigan criminal practice and it is taken verbatim from 2 Gillispie, Michigan Criminal Law & Procedure (2d ed), § 906, Form 334, p 1241.

## III.

*Did the trial court err in allowing a court stenographer to enter the jury room to reread instructions where both the prosecutor and defense counsel were also present?*

Appellant's objection on this issue is three-pronged: (a) error because the court stenographer rather than the trial judge relayed the instructions; (b) error because the reading took place in the jury room rather than in open court;[4] (c) error

---

[4] *Wilson v Hartley,* 365 Mich 188; 112 NW2d 567 (1961); 2 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), p 493, and cases cited therein.

by reason of prior decisions.[5] The Court has held that it is not error for the stenographer to do the reading when, as in the instant case, no objection was made. *People v Smith,* 192 Mich 355, 360; 158 NW 849 (1916). In *Galloway v Corbitt,* 52 Mich 460, 461; 18 NW 218 (1884), it was held no error was committed where a justice went to the jury room alone and answered a question and later, in the presence of both parties and by their consent, answered the same question in the jury room. Cases cited by defendant on this point are inapplicable since in none of the cited cases were counsel for each party present.

As to defendant's third objection, we also find the cases relied upon distinguishable. Counsel of both parties were not present nor, as in the instant case, was there stipulation both to the subject matter to be covered in the supplemental instruction and the procedure to be employed.

> *"[Prosecutor]:* Your Honor, the people will stipulate in this matter, and I believe Mr. Waldeck will, to have the five possible verdicts, and that alone, read back to the jurors by the court reporter.
>
> *"[Defense counsel]:* The defense so stipulates, your honor, but so I am clarified, it is my understanding that the instructions on murder in the first degree, murder in the second degree, manslaughter, not guilty by reason of insanity, and not guilty, will be the possible verdicts read to the jurors.
>
> *"The Court (addressing the court reporter):* Accompanied by both counsel, you may go to the jury room, and read that one paragraph."

We do not interpret *People v Heard,* 388 Mich 182; 200 NW2d 73 (1972), or *Zaitzeff v Raschke,* 387

---

[5] *People v Chambers,* 279 Mich 73; 271 NW 556 (1937); *People v Kangas,* 366 Mich 201; 113 NW2d 865 (1962); *People v Heard,* 388 Mich 182; 200 NW2d 73 (1972); *Zaitzeff v Raschke,* 387 Mich 577; 198 NW2d 309 (1972).

Mich 577; 198 NW2d 309 (1972), as holding that entry into the jury room by anyone under any circumstances is reversible without a showing of prejudice. Rather, we construe them to find for reversal because the defeated party could not hope to prove prejudice in a case where the trial judge went into the jury room. We do not condone or encourage the practice of entry into the jury room but the reversibility of such a practice depends upon prejudice. Significantly, appellant has not alleged or briefed either actual or concealed prejudice and in fact agreed to the procedure of which he now complains. As this Court has stated before, counsel may not sit back in ambush, later to entrap the opposite party on a procedure to which he previously agreed. *People v Morgan,* 50 Mich App 288, 291–292; 213 NW2d 276 (1973).

### IV.

*Did the trial court abuse its discretion by refusing to reinstruct the jury on the elements of first- and second-degree murder and the distinction between the two crimes?*

At the conclusion of the court stenographer's reading of the five possible verdicts, a woman juror asked for "a rereading of the degrees of murder" and stated that most, if not all, jurors were confused on this point and "desired to be further instructed concerning the elements of first- and second-degree murder and the distinction between the two". This information was reported to the trial judge who informed counsel he was reluctant to reinstruct the jury unless he received a note from them asking for additional information. Defense counsel then urged the court to reinstruct the jury in open court but the trial judge con-

cluded he would not reinstruct unless he received a note from the jury. No communication was made with the jury which reached agreement among themselves. The above facts are digested from an agreed-upon supplemental record stipulated to by respective counsel.

GCR 1963, 516.4, provides:

"Additional Instruction. While the jury is deliberating the court may in its discretion further instruct the jury, in the presence of or after notice to counsel. Objections thereto shall be made in a motion for new trial."

This rule has been interpreted in *Totok v Elfstrom,* 4 Mich App 705; 145 NW2d 388 (1966), *lv to app den,* 378 Mich 746 (1966); *People v Green,* 7 Mich App 346; 151 NW2d 834 (1967), *lv to app den,* 379 Mich 788 (1967); and *Witherspoon v Donohue,* 30 Mich App 109; 186 NW2d 58 (1971).

We find no abuse of discretion. The supplemental record is ambiguous. If all the jury wanted was "a rereading of the degrees of murder" then the request falls within *Witherspoon, supra,* where denial of plaintiff's request for a supplemental charge was held not in error because the requested charge had been adequately covered in the original instructions. If, on the other hand, the jury wanted an elaboration of the original charge, we note that the trial court did not absolutely refuse but only asked that it receive a formal request from the jury. Although this fact was not relayed back to the jury room, the jury had no difficulty getting word to the court of its first request, and presumably if the jury had desired to pursue the second request it could have made its intention known to the court. Defendant relies upon *People v Green, supra.* In that case, which involved a

charge of first-degree murder, the jury's request for clarification of "premeditation" was affirmatively responded to by the trial court and no error was found in the affirmative response. We do not believe that an affirmative response in *Green* is authority for finding reversible error for the negative response in the instant case, particularly when the trial court's action was not an absolute refusal.

Affirmed.

All concurred.