PEOPLE v MATHIS (ON REMAND)

Opinion of the Court

1. Criminal Law—Walker Hearings—Instructions to Jury—Voluntary Statements by Defendant.

It is reversible error for a trial judge to inform a jury that he has determined in a separate *Walker*-type hearing that the defendant had voluntarily uttered a statement to a policeman concerning the alleged crime, before submitting to the jury the question (1) whether the statement was made, and (2) whether, if made, it was true; fundamental fairness and elementary logic dictate that a jury not be asked to decide a question which, by necessary implication, the judge has already decided for them.

2. Criminal Law—Instructions to Jury—Presumed Malice or Intent—Jury as Factfinder.

Language in a jury instruction in a murder trial which speaks in terms of presumed malice or intent is reversibly erroneous, since such language may tend to invade the jury's province as factfinder.

3. Homicide—Criminal Law—Self-Defense—Duty to Retreat—Instructions to Jury—Co-Dwellers—Deadly Force.

A jury should be instructed on self-defense regarding the duty to retreat where a defendant charged with a homicide claims that

---

References for Points in Headnotes

[1] 21 Am Jur 2d, Criminal Law §§ 400, 441.
[2] 75 Am Jur 2d, Trial § 656 *et seq.*
[3, 4, 13] 40 Am Jur 2d, Homicide §§ 519–521.
  Homicide: duty to retreat where assailant and assailed share the same living quarters. 26 ALR3d 1296.
[5] 40 Am Jur 2d, Homicide §§ 44–48, 52.
[6] 40 Am Jur 2d, Homicide § 454.
[7] 21 Am Jur 2d, Criminal Law §§ 441, 451.
[8] 21 Am Jur 2d, Criminal Law § 440 *et seq.*
[9] 30 Am Jur 2d, Evidence § 1086.
  75 Am Jur 2d, Trial §§ 336, 489.
[10] 75 Am Jur 2d, Trial §§ 623, 938, 929.
[11, 12] 40 Am Jur 2d, Homicide §§ 498–500.
[14] 21 Am Jur 2d, Criminal Law §§ 204, 207.

he had been residing with the decedent in her home at the time of her death and where one view of the facts supports this argument; this evidence, if believed by the jury, would absolve the defendant of an obligation to retreat from an attack in the home before resorting to the use of deadly force in self-defense.

4. HOMICIDE—SELF-DEFENSE—CHARGES TO JURY.

The defense of self-defense is not available to a defendant charged with a homicide unless it appears that the accused was without fault or was not the aggressor in bringing about the conflict; a defendant may only be held legally accountable as an aggressor for responsive conduct by another that is reasonably attributable to the defendant's own conduct.

DISSENT BY D. E. HOLBROOK, J.

5. CRIMINAL LAW—PROSECUTORS—PRELIMINARY EXAMINATIONS—ELEMENTS OF CRIME—FIRST-DEGREE MURDER.

The prosecution must show at a preliminary examination that the offense charged has been committed, and there must be evidence on each element of the crime charged or evidence from which these elements may be inferred; a showing of premeditation is therefore required where the charge is first-degree murder.

6. HOMICIDE—PREMEDITATION—INFERENCES.

Premeditation may be inferred from the entire circumstances surrounding a killing.

7. CRIMINAL LAW—PRELIMINARY EXAMINATIONS—MAGISTRATES—COMPLAINT.

An examining magistrate is not bound by the limitations of a written complaint and may examine not only the truth of the charge in the complaint; but may consider other matters connected with the charge which he deems pertinent.

8. CRIMINAL LAW—PRELIMINARY EXAMINATIONS—MAGISTRATES—ADDING COUNTS—PROSECUTORS—UNFAIR SURPRISE—PREJUDICE.

An examining magistrate may in his discretion add a count not originally charged, upon a proper motion by the prosecutor, where there is no unfair surprise nor any showing of prejudice.

9. HOMICIDE—DIRECTED VERDICTS—FIRST-DEGREE MURDER—PREMEDITATION—DELIBERATION.

Denial of a defendant's motion for a directed verdict of acquittal of first-degree murder is not error where sufficient evidence had

been adduced at trial to support an inference of every element of the crime of first-degree murder, including premeditation and deliberation.

10. CRIMINAL LAW—APPEAL AND ERROR—INSTRUCTIONS TO JURY—DE-FENDANT'S THEORY OF CASE.

Reversal of a defendant's conviction is not justified on the basis of claimed errors in the jury instructions where (1) the defendant fully approved the instructions after they were given, (2) injustice did not result, and (3) the jury was instructed as to the defendant's theory of the case.

11. HOMICIDE—FIRST-DEGREE MURDER—MALICE—INSTRUCTIONS TO JURY—IMPLIED MALICE—DEADLY WEAPONS.

A trial court commits error in a trial for first-degree murder where its instructions result in taking the question of malice from the jury.

12. HOMICIDE—INSTRUCTIONS TO JURY—MALICE—DEADLY WEAPONS.

*There is no error in instructing the jury that it may find malice from the use of a deadly weapon in such a manner that the natural consequence would be to result in the death of the deceased; such a charge does not take away from the jury's determination the important element of malice aforethought (1) where the preliminary facts are for the jury to decide, and (2) where the jury is permitted, not required, to find malice if it finds that the defendant used a deadly weapon in such a way that the natural and ordinary probable use of such weapon would be to take a life.*

13. HOMICIDE—SELF-DEFENSE—DUTY TO RETREAT—CO-DWELLERS—DEADLY FORCE.

*A defendant was not a co-dweller with the deceased such that it granted him the right not to retreat from an assault by the deceased in her home before resorting to deadly force in self-defense where the evidence shows that the defendant had been living on and off with the deceased in her home but had a family elsewhere, the deceased had given the defendant notice that he no longer had the right to be there, and where the fatal confrontation occurred that same day after the defendant had left the home for a period of time and returned.*

14. CONSTITUTIONAL LAW—CRIMINAL LAW—DOUBLE JEOPARDY—NEW TRIALS.

A defendant is not unconstitutionally twice put in jeopardy when a new trial results because the jury is unable to agree on a verdict.

Appeal from Recorder's Court of Detroit, Joseph

A. Gillis, J. Submitted January 4, 1977, at Detroit. (Docket No. 26638.) Decided May 2, 1977.

Paul C. Mathis was convicted of second-degree murder. Defendant appealed. Affirmed, 55 Mich App 694 (1974). Defendant filed a delayed application for leave to appeal to the Supreme Court. In lieu of leave to appeal, remanded to the Court of Appeals for consideration as on leave granted of the issues raised in appellant's application to the Supreme Court, 395 Mich 788 (1975). On remand, reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Research, Training & Appeals, and *Larry L. Roberts,* Assistant Prosecuting Attorney, for the people.

*Lawrence Baron,* Assistant State Appellate Defender, for defendant.

Before: ALLEN, P. J., and D. E. HOLBROOK and D. C. RILEY, JJ.

## On Remand

D. C. RILEY, J. Following his second trial and conviction of second-degree murder (the first trial having failed for want of jury consensus), defendant Paul Mathis appealed unsuccessfully to this Court. *People v Paul Mathis,* 55 Mich App 694; 223 NW2d 310 (1974). Acting upon defendant's delayed application, the Supreme Court remanded the case to the Court of Appeals for consideration of the issues raised in defendant's application for leave. 395 Mich 788 (1975).

Defendant alleges a variety of instructional and

other errors which, he argues, deprived him of a fair trial. With four of his contentions, we agree.

Defendant's first claim of error raises an issue that has been resolved in his favor by *People v Gilbert,* 55 Mich App 168; 222 NW2d 305 (1974), and *People v Skowronski,* 61 Mich App 71; 232 NW2d 306 (1975). As in *Gilbert* and *Skowronski,* the judge below informed the jury that he had determined in a separate hearing that defendant had voluntarily uttered a statement to a policeman concerning the alleged crime. The jury's task, the judge then declared, was twofold: to determine (1) whether the statement was made; and (2) whether, if made, it was true. Although the defendant did not object at the time, he did object when the matter was revived by the prosecutor in rebuttal argument. While a more prompt objection would have been preferable, we consider defendant's effort sufficient to have preserved the error on appeal.

We therefore hold with *Gilbert* and *Skowronski, supra,* that the trial court erred reversibly in apprising the jury of his earlier finding at the *Walker*[1] hearing. It is senseless to ask the jury whether a statement has been made after informing them that the statement was voluntary. The jury is thus left to wonder whether it is being asked, on the one hand, to side with the judge's conclusion and proceed to determine the truth of the statement, or on the other, to overrule the judge and conclude on their own that the statement (no matter how voluntary) was never made. We cannot and do not expect a jury, so perplexed, to render a fair and impartial verdict. Consequently, we reverse.[2]

---

[1] *People v Walker (On Rehearing),* 374 Mich 331; 132 NW2d 87 (1965).

[2] This is not a case where a newly-carved rule, applied retroactively,

Defendant next asserts as error the lower court's *sua sponte* instruction on voluntary manslaughter which failed to incorporate a charge on involuntary manslaughter. This issue is a mirror image of a question addressed and resolved in *People v Ora Jones,* 395 Mich 379, 390–391; 236 NW2d 461 (1975). We trust that it will not recur on retrial.

Defendant argues that reversible error arose from the following instruction:

"The element of malice is present in murder and not in manslaughter. Murder may be and often is committed without any specific intent or actual intention of killing.

"It is not necessary in all cases that one charged with murder must have intended to take the life of the person he slays by his wrongful act.

"If the intent with which he acted shall be equivolent *[sic]* in legal character to a crime purposely aimed against human life, you find the accused uses upon another a deadly weapon such as a pistol in such a manner that the natural and ordinary probable use of such a deadly weapon in such a manner would be to take the life, *the law presumes that such a person so assaulting intended to take the life.*

"You may find malice from the use of such a deadly weapon in such a manner in which it was used that the natural consequence would be to result in the death of the deceased." (Emphasis added).

While the instant instruction is perhaps slightly less egregious than the charge condemned in *People v Martin,* 392 Mich 553; 221 NW2d 336 (1974), it is nonetheless reversibly erroneous. *People v Conway,* 70 Mich App 629; 247 NW2d 317 (1976).

works vexation upon a trial court which relied on established precedent for support. Rather, this is a case where fundamental fairness and elementary logic dictate that a jury not be asked to decide a question which, by necessary implication, the judge has already decided for them.

Compare *People v Rosemary Gibson,* 71 Mich App 543; 248 NW2d 613 (1976). Hence, instructional language speaking in terms of presumed malice or intent should be avoided on retrial, lest the jury's province as factfinder be invaded and a possible conviction undermined.

The trial court should also upon remand take pains to see that the jury is properly instructed on self defense. In this regard, we note that one view of the facts would support defendant's present argument that he had been residing with the decedent in her home at the time of her death. Thus, this evidence, if believed by the jury, would absolve defendant of an obligation to retreat before resorting to deadly force in self defense. See *People v Smith,* 54 Mich App 652; 221 NW2d 464 (1974), *People v McDaniels,* 70 Mich App 469; 245 NW2d 793 (1976), and *People v McGrandy,* 9 Mich App 187; 156 NW2d 48 (1967). Moreover, with regard to the requirement that defendant be non-aggressive, *i.e.,* without fault in bringing on the deadly affray, *People v Bright,* 50 Mich App 401, 406; 213 NW2d 279 (1973), the lower court should charge (assuming sufficient evidence is adduced on the point) that defendant "may only be held legally accountable as an aggressor for responsive conduct by another that is reasonably attributable to appellant's [defendant's] own conduct". *People v Townes,* 391 Mich 578, 592; 218 NW2d 136 (1974). See also LaFave & Scott, Criminal Law, p 395, quoted in *People v Joeseype Johnson,* 75 Mich App 337; 254 NW2d 667 (1977).

On all other claims of error, we agree with Judge HOLBROOK's analysis.

Reversed and remanded.

ALLEN, P. J., concurred.

D. E. HOLBROOK, J. *(dissenting).* Defendant was originally charged with second-degree murder, MCLA 750.317; MSA 28.549. During the preliminary examination the prosecutor moved and the court ordered over the defendant's objection that a count of first-degree murder be added. MCLA 750.316; MSA 28.548. After a trial in which the jury was unable to agree, defendant was retried on the first-degree murder charge and convicted of second-degree murder by another jury on November 4, 1971. He was sentenced to a prison term of 14 to 30 years on December 2, 1971. Defendant requested appointed appellate counsel on January 14, 1972, and counsel was appointed on January 19, 1972. Appointed appellate counsel was removed by the trial court and defendant was allowed to proceed to this Court *in propria persona.* An order to show cause was later filed against appellate counsel. Defendant's conviction was affirmed by this Court, 55 Mich App 694; 223 NW2d 310 (1974). Defendant filed a delayed application for leave to appeal to the Supreme Court on or about June 27, 1975. On November 19, 1975, the Supreme Court remanded this case to this Court for consideration of the issues raised in defendant's application for leave to appeal, 395 Mich 788 (1975). Defendant raises numerous issues on appeal.

I

Defendant maintains it was legally and factually improper to charge him with first-degree murder. Defendant was originally charged with second-degree murder. However, during the preliminary examination the prosecutor moved and the court ordered that a charge of first-degree murder be added. Defendant claims error in that there was

no evidence to support a first-degree murder charge, and that it was improper at that point to add such a charge.

The prosecution must show at a preliminary examination that the offense charged has been committed, there must be evidence on each element of the crime charged or evidence from which these elements may be inferred, including premeditation where the charge is first-degree murder. *People v Oster,* 67 Mich App 490; 241 NW2d 260 (1976). The facts herein could support a finding that defendant did have time to take a second look and premeditate in regards to this murder.

Defendant and the deceased herein lived together off and on for several months. They had previously had several violent arguments. Testimony of a girl who lived with them indicated that on the day of this incident defendant and the deceased had an argument which extended off and on for several hours. The defendant took the deceased's gun from her purse. The deceased, who owned the home, told the defendant to pack up and leave. Defendant threatened several times to kill the deceased. The evidence indicated that the defendant went to the basement, retrieved a hammer and, thereafter, threatened the deceased with this instrument. The deceased told the defendant she would call the police unless he returned her gun and left the premises. The defendant responded that if she did call the police he would blow her brains out and tell the police that she was shot during a fight. The defendant and the deceased had bad blood between them. Defendant was apparently supported in part, at least, by the deceased who during the course of an argument demanded that he leave. He left the premises but returned shortly with the gun he had taken ear-

lier from the deceased's purse. Shortly thereafter a shot was heard and defendant was seen with the murder weapon in his hand, emerging from the bathroom where the deceased's body was. Premeditation can be inferred from the entire circumstances surrounding the killing. *People v Vertin,* 56 Mich App 669; 224 NW2d 705 (1974), *People v Moss,* 70 Mich App 18; 245 NW2d 389 (1976). Defendant did attempt to explain away certain of these facts and, if believed, his version of the story may have allowed a jury to find him guilty only of manslaughter or even possibly acquit on the basis of excusable homicide, an accident. Nevertheless, there was evidence which could support an inference of first-degree murder. We are not the examining magistrate. The examining magistrate herein did not err in finding evidence of premeditation.

Procedurally we also feel there was no error. Defendant objected to adding the first-degree murder count at the preliminary examination. An examining magistrate is not bound by the limitations of the written complaint and may examine not only the truth of the charge in the complaint, but may consider other matters connected with the charge which he deems pertinent. *People v Hutchinson,* 35 Mich App 128; 192 NW2d 395 (1971), *People v Dochstader,* 274 Mich 238; 264 NW 356 (1936), *Yaner v People,* 34 Mich 286 (1876). An examining magistrate may in his discretion add a count not originally charged upon a proper motion by the prosecutor. There was no introduction of unfair surprise nor any showing of prejudice. Therefore, the examining magistrate did not abuse his discretion by adding the first-degree murder count. An additional examination on the first-degree murder charge would have revealed

the exact same evidence. Defendant has not shown
how an additional examination would have bene-
fited him or changed the results herein.

The trial court further did not err in denying
defendant's motion for a directed verdict of acquit-
tal of murder in the first degree. See *People v*
*Royal,* 62 Mich App 756; 233 NW2d 860 (1975).
There was sufficient evidence adduced at trial to
support an inference of every element of this
crime, including premeditation and deliberation.
See *People v Morrin,* 31 Mich App 301; 187 NW2d
434 (1971), *lv den* 385 Mich 775 (1971), *People v
Meier,* 47 Mich App 179; 209 NW2d 311 (1973),
*People v Vertin, supra.*

## II

The trial court herein instructed the jury on
first and second-degree murder and on manslaugh-
ter. However, the court's instructions essentially
charged only voluntary manslaughter. The prose-
cution claimed intentional shooting. One of the
defenses asserted was that the shooting was acci-
dental, that it occurred during the course of a fight
between the defendant and the deceased. See,
*People v Ora Jones,* 395 Mich 379, 393; 236 NW2d
461 (1975).[1]

The facts in the instant case justify affirmance.
The court did instruct the jury on defendant's
theory of accident herein and explained that an
accident could even constitute excusable homicide
justifying acquittal. That instruction was as fol-
lows:

---

[1] This Court has struggled with the prospective or retroactive
application of various aspects of *People v Ora Jones. See People v
Thomas,* 68 Mich App 302; 242 NW2d 564 (1976), *People v Jackson,*
70 Mich App 478; 245 NW2d 797 (1976), *People v Harrison,* 71 Mich
App 226; 247 NW2d 360 (1976).

"Now the defendant also claims accident. Excusable homicide is a homicide which is committed by accident and misfortune in doing any lawful act by lawful means with usual, ordinary caution and without any unlawful intent, or by accident and misfortune in the heat of passion upon any sudden and sufficient provocation, or upon sudden combat, without any dangerous weapon being used and not done in a cruel or unusual manner.

"So, if you find that the gun went off accidentally while the defendant was trying to disarm Caroline Witt, you may find this to be an excusable homicide."

The court also properly instructed the jury on self-defense. Defendant, however, sought to have the jury instructed only on first-degree murder.[2] Also, at the conclusion of the instructions defendant indicated his approval of the instructions. This

---

[2] At the beginning of trial defense counsel indicated his desire to go to trial only on the first-degree murder charge:

"*Mr. Burke:* No. There was one further thing.

"The Information I have indicates Count I is first degree murder, and Count II is second degree murder.

"Count I in the Information I have charges murder in the first degree; Count II charges murder in the second degree.

"I would ask the Court at this time to strike Count II from the Information and let the Information stand simply on Count I, which is murder in the first degree.

"Murder in the second degree may be an included offense if the Court would desire to give or feel it should give at the close of the case, I don't know.

"In any event, I don't believe it's proper to have it included in the Information, inasmuch as the examining magistrate found the additional element of premeditation having conducted the Examination and bound the defendant over on the charge of first degree murder when originally he was charged with second degree murder.

"*The Court:* Well, I only read Count I; but I give instructions on first degree, second degree, and manslaughter.

"*Mr. Burke:* I think at this point that we may have objections to that procedure, your Honor, because we are indicating self-defense.

"I do want to note on the record that as of this point the defendant probably is desirous—depends on how the trial goes—desirous of having the jury consider guilt of first degree murder or not guilty without benefit of included offenses."

However, at the conclusion of trial counsel indicated "satisfaction" with the court's instructions, including second-degree murder and manslaughter instructions.

writer cannot justify reversal where defendant
actually sought to narrow the jury's consideration
to one charge, sought to exclude the charge upon
which he was convicted and also that which he
now asserts was also proper. Defendant fully ap-
proved the court's instructions after they were
given, injustice did not result and the jury was
instructed as to defendant's theory of accident in
the instant case.

### III

Defendant contends that the trial court commit-
ted reversible error by improperly instructing the
jury on the elements of malice. Defendant does
correctly state that a trial court commits error
when its instructions result in taking the question
of malice from the jury. *People v Martin,* 392 Mich
553; 221 NW2d 336 (1974), *People v Conway,* 70
Mich App 629; 247 NW2d 317 (1976). Where the
instruction is such that the effect is to imply
malice as a matter of law from the use of a deadly
weapon, error is committed. In *Martin* the court
charged that: " 'if a man kills another suddenly
without any warning, where a deadly weapon is
used the law implies malice and the killing is
murder' ". 392 Mich at 560. (Emphasis deleted.)
This differs substantially from the charge given
herein.

"The element of malice is present in murder and not
in manslaughter. Murder may be and often is commit-
ted without any specific intent or actual intention of
killing.

"It is not necessary in all cases that one charged with
murder must have intended to take the life of the
person he slays by his wrongful act.

"If the intent with which he acted shall be equivolent
*[sic]* in legal character to a crime purposely aimed

against human life, you find the accused uses upon another a deadly weapon such as a pistol in such a manner that the natural and ordinary probable use of such a deadly weapon in such a manner would be to take the life, the law presumes that such a person so assaulting intended to take the life.

"You may find malice from the use of such a deadly weapon in such a manner in which it was used that the natural consequence would be to result in the death of the deceased."

In *People v Collins,* 166 Mich 4, 7; 131 NW 78 (1911), the Court expressly approved the following charge:

" 'And it is the law that death resulting from an assault, in the absence of any proof to the contrary, is presumed to be felonious—either murder or manslaughter. And where the death is shown to have resulted from the use of a deadly weapon, in the absence of any proof to the contrary, in the absence of any testimony in relation to that, the presumption is that the death was inflicted with malice—with malice aforethought in causing the death, in the assault.' "

This charge is indistinguishable from the charge given in the instant case. See also *People v Potter,* 5 Mich 1 (1858), *Wellar v People,* 30 Mich 16 (1874), *People v Miller,* 91 Mich 639; 52 NW 65 (1892), *People v Wolf,* 95 Mich 625; 55 NW 357 (1893), *People v Bourne,* 385 Mich 170; 188 NW2d 573 (1971), Justice BRENNAN concurring, *People v Rapier,* 43 Mich App 297; 204 NW2d 339 (1972), *People v Johnson,* 53 Mich App 329; 220 NW2d 65 (1974), *People v Juniel,* 62 Mich App 529; 233 NW2d 635 (1975), *People v Rosemary Gibson,* 71 Mich App 543; 248 NW2d 613 (1976).

The fundamental question before this Court is whether the charge took away from the jury's determination the important element of malice

aforethought. See *People v Rosemary Gibson, supra.* This charge did not. The preliminary facts were for the jury to decide. If they did find that the defendant used a deadly weapon in such a way that the natural and ordinary probable use of such weapon would be to take a life, *then they were permitted* to find the element of malice. There is no error in this instruction. See 3 Gillespie, Michigan Criminal Law & Procedure (2d ed), § 1647, p 1980.

## IV

The majority opinion states that: "Thus, this evidence, if believed by the jury, would absolve defendant of an obligation to retreat before resorting to deadly force in self defense". This writer cannot conclude that this is so. In most of the cases involving co-occupants which hold that a defendant is not required to retreat before resorting to deadly force the defendant and the deceased were husband and wife. *People v Lenkevich,* 394 Mich 117; 229 NW2d 298 (1975), *People v McGrandy,* 9 Mich App 187; 156 NW2d 48 (1967), *People v Paxton,* 47 Mich App 144; 209 NW2d 251 (1973), *People v McDaniels,* 70 Mich App 469; 245 NW2d 793 (1976). The one case cited by the majority not involving a husband and wife is *People v Smith,* 54 Mich App 652; 221 NW2d 464 (1974). However, in *Smith* the defendant and the deceased had been living together for a number of years and in an effort to break off the relationship, defendant moved out of his house until the deceased could find a new residence. The defendant moved in with another woman. On the night of the slaying, the deceased came to the apartment where defendant was staying and an argument ensued. The Court held in *Smith* that defendant

was a dweller there and had no duty to retreat. The facts in *Smith* are distinguishable. At the time of the confrontation in *Smith,* defendant was a resident of the apartment and the deceased was not a co-resident. The owner or co-occupant in *Smith* did not deny that defendant was rightfully living at the scene of this confrontation. The facts in the instant case reveal a situation where defendant was not a co-dweller with the deceased. The deceased owned the home, however, defendant lived there off and on. Defendant had a family elsewhere. On the day of this incident the defendant and the deceased argued and defendant was told to pack up and leave. Defendant did not pack up, but did leave for a period of time. Later that day he returned and shortly thereafter the fatal confrontation occurred. Obviously, this is not the same type of situation as considered by this Court in *People v McGrandy, supra,* or the Supreme Court in *People v Lenkevich, supra,* or in the other cases cited herein which were considered by this Court. This writer cannot conclude that this was defendant's dwelling such that it granted him the right not to retreat from an alleged assault by his girlfriend who owned the house and had given defendant notice that he no longer had the right to be there.

V

Defendant also raises several additional issues. Defendant maintains that he was unconstitutionally twice put in jeopardy when the new trial resulted because the jury in the first trial was unable to agree on a verdict. This claim was recently considered by this Court and rejected. *People v Morris,* 69 Mich App 545; 245 NW2d 126 (1976).

Defendant also alleges that the court erred in instructing the jury on certain statements which were attributable to defendant and which were submitted by the prosecution at trial. We would advise the trial court to observe recent decisions of this Court which involve instructions to the jury as to statements attributable to defendants which are submitted at trial. See *People v Gilbert,* 55 Mich App 168; 222 NW2d 305 (1974), *People v Skowronski,* 61 Mich App 71; 232 NW2d 306 (1975). An erroneous instruction in regards to a defendant's statements may well weigh heavily on a jury and invade their factfinding function. Nevertheless, this trial occurred several years prior to our guidance in those decisions. Defendant did not object at trial to these instructions. Defendant was free to familiarize the jury with the circumstances that attended the taking of his statement, including facts bearing on voluntariness, to impeach his credibility or to challenge the fact that it was ever given at all. Therefore, there was no prejudice and no error.

Defendant's remaining allegations of error are meritless and require no discussion.

This writer votes to affirm.