PEOPLE *v.* BOURNE

Opinion of the Court

1. Homicide—Manslaughter—Intent.

  A killing may be only manslaughter even though there is an intent to kill, as voluntary manslaughter often involves a direct intent to kill, but the law reduces the grade of the offense because, looking at the frailty of human nature, it considers great provocations sufficient to excite the passions beyond the control of reason.

2. Homicide—Murder—Malice—Jury Question.

  In a charge of murder, the presence or absence of malice is a question of fact to be determined by the jury.

Concurring Opinion

T. E. Brennan, Swainson, and Williams, JJ.

3. Homicide—Manslaughter—Intent—Instructions—Words and Phrases.

  *Judge's instruction to the jury that "in manslaughter it may not be shown that there was any intent" on the part of the defendants to kill the victim was a correct statement of the law as the judge was telling the jury that manslaughter need*

References for Points in Headnotes

[1, 3] 40 Am Jur 2d, Homicide §§ 54–70.
[2, 4] 40 Am Jur 2d, Homicide §§ 45, 50, 51.
[4] 40 Am Jur 2d, Homicide §§ 501, 509.
[5] 53 Am Jur, Trial § 76.
[6] 53 Am Jur, Trial § 648.

*not be an intentional killing and the word "may" expresses liberty or permission.*

4. Homicide—Murder—Use of Deadly Weapon—Malice—Instructions.

*Court's charge "as a matter of law that where one uses a deadly weapon without justification he shows a disregard for life and safety amounting to malice" and "if a man kills another suddenly without any, or where a dangerous or deadly weapon is used without considerable provocation the law implies malice and the killing is murder" was not erroneous as it was merely setting forth the rule that if the jury be persuaded from all the evidence, beyond a reasonable doubt that a deadly weapon was used without justification, they would be obliged to conclude that the use of the weapon was with malice and that a death resulting from use of a deadly weapon without considerable provocation is presumed malicious.*

5. Criminal Law—Remarks of Judge.

*Judge's statement to the jury in a criminal case that cases "are easy to appeal nowadays" in denying the jury's request that the testimony of a witness be read to them was not error as there is no likelihood that the jury might have misconstrued the statement for the judge was talking about an appeal from his ruling, not an appeal from their verdict.*

6. Criminal Law—Instructions.

*Trial court did not erroneously instruct the jury in a criminal case concerning an incident in another trial where the instructions stated, in defining a "moral certainty" that the jurors should disregard the appearance of a person, and referred to an incident in another case where a juror improperly considered that a defendant "didn't look like a boy who would do a thing like that" and stated that a judgment based on appearance is deceiving.*

Appeal from Court of Appeals, Division 2, Quinn, P. J., and McGregor and Bronson, JJ., order denying application for leave to appeal from Recorder's Court of Detroit, Elvin L. Davenport, J. Submitted February 2, 1971. (No. 22 January Term 1971, Docket No. 52,635.) Decided July 7, 1971.

Samuel Bourne was convicted of second-degree murder. Application for delayed appeal denied by the Court of Appeals. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Angelo A. Pentolino,* Assistant Prosecuting Attorney, for the people.

*Arthur J. Tarnow (Defenders' Office—Legal Aid and Defender Association of Detroit),* for defendant on appeal.

ADAMS, J. I concur with Justice T. E. BRENNAN. With regard to the two major issues raised on this appeal, the law is clear. A killing may be only manslaughter even though there is an intent to kill. The principle is set forth by Justice CAMPBELL in *People* v. *Scott* (1859), 6 Mich 287, 295:

"Voluntary manslaughter often involves a direct intent to kill, but the law reduces the grade of the offense because, looking at the frailty of human nature, it considers great provocations sufficient to excite the passions beyond the control of reason."

See also: *Nye* v. *People* (1876), 35 Mich 16; *People* v. *Lilley* (1880), 43 Mich 521; *People* v. *Holmes* (1896), 111 Mich 364; *People* v. *Milhem* (1957), 350 Mich 497; 3 Gillespie, Michigan Criminal Law & Procedure (2d ed), § 1664, p 2006.

In a charge of murder, the presence or absence of malice is a question of fact to be determined by the jury. Justice CHRISTIANCY in *Maher* v. *People* (1862), 10 Mich 212, 218, stated this principle:

"It is for the court to define the legal import of the term, malice aforethought, or, in other words,

that state or disposition of mind which constitutes it; but the question whether it existed or not, *in the particular instance,* would, upon principle, seem to be as clearly a question of fact for the jury, as any other fact in the cause, and that they must give such weight to the various facts and circumstances accompanying the act, or in any way bearing upon the question, as in their judgment, they deserve: and that the court have [*sic*] no right to withdraw the question from the jury by assuming to draw the proper inferences from the whole, or any part of, the facts proved, as presumption of law. If courts could do this, juries might be required to find the fact of malice where they were satisfied from the whole evidence it did not exist." (Emphasis by Court.)

See also: *People* v. *Potter* (1858), 5 Mich 1; *Wellar* v. *People* (1874), 30 Mich 16, 19; 2 Gillespie, Michigan Criminal Law & Procedure (2d ed), § 657, p 843.

Judge Davenport's charge to the jury occupies 35-1/2 pages of appellant's appendix in this case. There were no exceptions to the charge. From a review of the record in this case and the charge of the trial judge, I am unable to conclude that any error complained of has resulted in a miscarriage of justice. MCLA § 769.26 (Stat Ann 1954 Rev § 28.1096).

I vote to affirm.


T. M. Kavanagh, C. J., and Black, T. G. Kavanagh, and Williams, JJ., concurred with Adams.


T. E. Brennan, J. (*concurring*). The defendant was convicted of second-degree murder by a jury and he was sentenced to a term of 10 to 20 years on October 17, 1967, by Recorder's Court Judge Elvin

L. Davenport. On April 18, 1969, Judge Davenport denied defendant's delayed motion for new trial.

The Court of Appeals denied defendant's application for delayed appeal, with the Honorable LOUIS D. McGREGOR dissenting, on October 3, 1969.

We granted leave to appeal on June 11, 1970.

Appellant raises four issues on appeal, all relating to the trial court's instructions to the jury. We treat them seriatim:

## I.

"A. THE COURT ERRONEOUSLY INSTRUCTED THE JURY THAT THERE *CANNOT BE AN INTENT TO KILL* IN THE CRIME OF MANSLAUGHTER."

The basis claimed for this issue is the following excerpt from the court's instruction:

"In manslaughter it may not be shown that there was any intent on the part of James Edward Carey or Samuel Bourne or both to kill James Brooks."

Appellant claims that the trial judge said that there *"cannot"* be an intent to kill in the crime of manslaughter. The judge did not use the word "cannot". He said "it *may not* be shown". The word "can" expresses ability or competancy. The word "may" expresses liberty or permission.

The quoted section of the charge does not convey —even lifted out of context—the meaning imputed by appellant. The judge was not telling the jury that no intentional killing can be manslaughter; he was telling the jury that manslaughter need not be an intentional killing. This is a correct statement of the law. The trial court's further exposition of the point, later in the charge, was to like effect.

II

"B. THE COURT ERRONEOUSLY IN-STRUCTED THE JURY RELATIVE TO THE ELEMENT OF MALICE IN MURDER."

In support of this claim of error, appellant quotes from the trial court's charge as follows:

"I charge you as a matter of law that where one uses a deadly weapon without justification he shows a disregard for life and safety amounting to malice.

"I charge you that if a man kills another suddenly without any, or where dangerous or deadly weapon is used without considerable provocation the law implies malice and the killing is murder."

It is the position of the appellant that malice is a question of fact for the jury, and that the above quoted instruction constituted error, because it stated that the law implies malice under the circumstances stated.

Appellant claims that a proper charge would have been as approved in *People* v. *Collins* (1911), 166 Mich 4:

" 'And it is the law that death resulting from an assault, *in the absence of any proof to the contrary,* is presumed to be felonious—either murder or manslaughter. And where the death is shown to have resulted from the use of a deadly weapon, *in the absence of any proof to the contrary, in the absence of any testimony in relation to that,* the presumption is that the death was inflicted with malice—with malice aforethought in causing the death, in the assault.' " (Emphasis added.)

The instant charge is to be distinguished from *Collins.*

In this case, the trial judge was talking about the use of a deadly weapon *"without justification"* and killing *"suddenly without any  *  *  *  provocation"*

or where a deadly weapon is used *"without considerable provocation"*.

The *Collins* charge made no reference to the existence of the factor of "no justification" or the element of "no provocation."

The charge given here was merely setting forth the rule that if the jury be persuaded from all the evidence, beyond any reasonable doubt that a deadly weapon was used without justification, they would be obliged to conclude that the use of the weapon was with malice.

Similarily, the charge in this case was that a death resulting from use of a deadly weapon *without considerable provocation* is presumed malicious. The *Collins* charge was not talking about a death resulting from use of a deadly weapon *without considerable provocation*.

Since the *Collins* charge was silent on the element of provocation, it was necessary for the court there to make reference to "the absence of any proof to the contrary".

We find no error in the charge given here.

### III.

"C. THE COURT ERRONEOUSLY INSTRUCTED THE JURY THAT APPEALS ARE EASY."

Appellant's argument here is as follows:

"The court erred and prejudiced the defendant when he instructed the jury that 'They are easy to appeal nowadays'.

"Therefrom the jury was likely to infer that they could relax and that an unjust verdict by them would be corrected on appeal. The judge thereby bolstered a common law [*sic*] misconception of the power of the appellate courts to reverse fact findings of juries."

The record does not support the claim of the appellant.

The jury had been charged and had retired to deliberate. They returned to the courtroom and asked for the testimony of one of the witnesses to be read to them. The judge declined to do so, stating:

"My reason for it is that it places,—there have been cases appealed on that theory, to give you certain testimony places too much emphasis on it. One person's testimony. They are easy to appeal nowadays, but I don't think you will have any problems with the other things."

We find no likelihood that the jury might have misconstrued the court's statement. He was talking about an appeal from his ruling, not an appeal from their verdict. We find no error.

## IV.

"D. THE COURT ERRONEOUSLY INSTRUCTED THE JURY CONCERNING AN INCIDENT FROM ANOTHER TRIAL."

The record does not support this claim of the appellant, either.

Appellant argues:

"The court erred and prejudiced the defendant by instructing the jury concerning an incident from another trial. He warned the jury against 'getting into that pitfall' of a juror who wouldn't convict because another defendant 'didn't look like a boy who would do that'.

"Defendant was a young man at the time of trial. The trial court must have considered him 'a nice-looking little boy,' because it gave an instruction that the jury should not be influenced by that fact. It is defendant's contention that that instruction is

incorrect and prejudicial to the defendant in that the jury may construe it to mean that the trial court did not want defendant found not guilty."

The actual statement of the trial judge in its full context was as follows:

"A moral certainty is that kind of certainty which arises in your own mind after weighing and evaluating the testimony of the witnesses as to each material element in the case. It is the kind of conviction that you can take home with you and sleep with, that is about the best way I can put it. For example, you made a judgment on the basis of 'I don't like the looks of that person,' there is nothing more deceiving than trying to define what one is by the way he looks. If he is good looking, we can't help that, if we are ugly, we are ugly, or whatever standard there is, so you had better go beyond his looks. That has happened in this Court and I became the butt of it. The juror, I don't know whether she was 13 or 14 or what number she was, but with a jury of 14 as in this case will ultimately be,—12, will ultimately come, whatever the drawing of lots shows to decide the case but this was one that hadn't gotten to that point and was taken off by drawing the pills out of the box. She went promptly into the corridor and talked to a newspaperman. It was a case that had gotten a lot of publicity,—'What would your verdict have been'—well, the judge hadn't even given his charge and she said should let him off. Why? Because he didn't look like a boy who would do a thing like that.

"Well, the question is was she paying attention to his looks or the testimony and then they put her age down and that was bad. She didn't like that in particular, you know, when you get to that point when you don't tell your age too hastily, not like the teenager who says I am 14 going on 15; you get to the point where you start going backwards. But at any rate she came in the next morning and

wanted to know, she was after the press and wanted to know and I said, 'You told them?'—'Yes.' And I said, 'Now, how did you think that way.' And she answered, 'Well, he didn't look like a boy who would do that, I really didn't understand too much of the case.' Now, I want to, you want to be very careful, I want to say you want to be very careful, this is a serious charge. You ought to be very careful about getting into that pitfall.

"If you do your best to arrive at a verdict that you know is honest and arrived at by the best of your judgment then you can sleep."

Affirmed.

SWAINSON and WILLIAMS, JJ., concurred with T. E. BRENNAN, J.