PEOPLE v MARTIN

OPINION OF THE COURT

1. HOMICIDE—MURDER—MANSLAUGHTER—SELF-DEFENSE—INSTRUC-
    TIONS—APPEAL AND ERROR.

    Reversible error occurred at a murder trial where the trial court
    failed to grant a juror's request for clarification regarding the
    charge of manslaughter and instructions relating to self-de-
    fense.

2. HOMICIDE—MURDER—FIRST-DEGREE MURDER—SECOND-DEGREE
    MURDER—INSTRUCTIONS—PREMEDITATION.

    Trial court's instructions did not accurately provide the jury with
    sufficient understanding of the elements comprising the possi-
    ble verdicts where certain paragraphs of the instructions indi-
    cated that the absence of premeditation distinguishes second
    from first-degree murder but the following paragraph contain-
    ing the formal charge obfuscated the difference rendering the
    two possible verdicts indistinguishable.

3. HOMICIDE—PREMEDITATION—DELIBERATION—JURY.

    Premeditation and deliberation may be found to exist by a jury
    when a thought process, undisturbed by hot blood and involv-
    ing reflection upon a planned course of conduct fully measuring
    and evaluating the consequences of a killing, is found to have
    been formed in the mind of a defendant.

REFERENCES FOR POINTS IN HEADNOTES
[1] 40 Am Jur 2d, Homicide §§ 519–521.
   Duty of trial court to instruct on self-defense, in absence of request
   by accused, 56 ALR2d 1170.
[2] 40 Am Jur 2d, Homicide §§ 529, 534.
[3] 40 Am Jur 2d, Homicide §§ 493, 501, 509.
[4, 5] 40 Am Jur 2d, Homicide §§ 263–269, 438.
[6] 40 Am Jur 2d, Homicide §§ 246, 263, 472.
   Homicide: presumption of deliberation or premeditation from the
   circumstances attending the killing, 96 ALR2d 1435.
[7, 8] 53 Am Jur, Trial § 668.
[9, 10] 53 Am Jur, Trial §§ 747, 748.

4. Homicide—Malice—Inferences—Presumptions—Weapons—
  Deadly Weapon.

   Michigan has long ago considered malice a permissible inference
   to be drawn by a jury rather than a presumption of law; the
   law does not imply malice where a deadly weapon is used.

5. Homicide—Murder—Malice Aforethought—Presumptions—
  Burden of Proof.

   Malice aforethought is as essential an ingredient of the offense of
   murder as the act which causes the death, and the presumption
   of innocence applies equally to both the ingredients of the
   offense; hence, the burden of proof, as to each, rests upon the
   prosecution.

6. Homicide—Malice Aforethought—Question of Fact—Infer-
  ences—Presumptions.

   Defining the legal import of the term, malice aforethought, is for
   a court in a homicide case; but the question whether it existed
   or not, *in the particular instance* would be as clearly a question
   of fact for the jury, as any other fact in the cause; the court has
   no right to withdraw the question from the jury by assuming to
   draw the proper inferences from the whole, or any part of, the
   facts proved, as presumption of law.

7. Criminal Law—Instructions—Jury—Evidence.

   A trial judge has a responsibility to insure that cases are pre-
   sented to the jury in an intelligent manner so that they may
   have a clear and correct understanding of what it is they are to
   decide; an erroneous or misleading charge denies a defendant
   charged with a crime the right to have a properly instructed
   jury pass upon the evidence.

8. Criminal Law—Instructions—Questions of Jury.

   The consideration of jurors having to deliberate without fully
   understanding the elements which comprise the possible ver-
   dicts must prevail over the potential danger that deliberations
   may begin in open court when a court attempts to clarify
   questions of the jury where the chargeable offenses are not
   adequately defined and the essential elements necessary to
   establish them are either absent or presented in a manner
   which creates doubt as to whether the jury understood and
   appreciated the court's instructions.

9. Criminal Law—Instructions—Reasonable Doubt—Failure to
  Object.

   Complete instructions regarding reasonable doubt were ade-

quately set forth and the defendant was not prejudiced by a sentence of the instructions which stated "In this charge I may say the People produced warrant conviction evidence which convinces you beyond a reasonable doubt" and must be considered either a misstatement by the trial judge or an error attributable to the court reporter where no objection was raised.

CONCURRING OPINION

WILLIAMS, J.

See headnotes 1–8.

10. CRIMINAL LAW—INSTRUCTIONS—REASONABLE DOUBT—SUPREME COURT—APPEAL AND ERROR.

*Instruction that "In this charge I may say the People produced warrant conviction evidence which convinces you beyond a reasonable doubt" in all likelihood represents misstatement by the trial judge or an error attributable to the court reporter; however, the Michigan Supreme Court is not warranted, with so serious an error involved, in rewriting this instruction; instead, it ought to have been remanded to the trial court to check its accuracy and if an accurate transcription, this misstatement, on its own, presents grounds for reversal.*

Appeal from Court of Appeals, Division 1, McGregor, P. J., and Quinn and Peterson, JJ., affirming Recorder's Court of Detroit, Yale L. Kerby, J. Submitted May 7, 1974. (No. 3 May Term 1974, Docket No. 54,750.) Decided September 6, 1974.

Walter Lee Martin was convicted of second-degree murder. Defendant appealed to the Court of Appeals. Affirmed. Defendant appeals. Reversed and remanded for new trial.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Robert A. Reuther,* Assistant Prosecuting Attorney, for the people.

*Sidney Kraizman,* for defendant on appeal.

J. W. FITZGERALD, J. Defendant's jury conviction of second-degree murder[1] in Detroit Recorder's Court was affirmed by the Court of Appeals and we granted leave to appeal. The principal question is whether reversible error occurred where the trial court failed to grant a juror's request for clarification regarding the charge of manslaughter and instructions relating to self-defense. We answer affirmatively.

Conflicting testimony was introduced at trial regarding the circumstances surrounding a shooting incident resulting in the death of Herman Willis. Defendant stated he was walking on Peterboro Street when he was confronted by Willis and a friend, Charles Nabors. Willis and Nabors blocked the sidewalk which prompted a scuffle between defendant and Willis. During the scuffle Willis attempted to pull a pistol from his belt, but defendant was able to restrain him by restricting his arm movement. Simultaneously, defendant drew his own weapon he had been carrying and fired three shots, one of which struck the deceased in the head. Defendant ran from the scene of the shooting and was later apprehended.

Witness Nabors testified differently. He stated that defendant, when passing Willis and himself on the sidewalk, grabbed Willis and asked "Ain't your name Herman Williams?" Willis answered "I'm not Herman Williams." The defendant then pulled a gun from his pocket, grabbed Willis' arm, and shot him through the head and stomach. Nabors further testified that Willis was unarmed.

At the completion of the trial court's instruc-

---

[1] MCLA 750.317; MSA 28.549.

tions to the jury, the following colloquy occurred between the court and juror #6:

"*The Court:* Now, at this time before we excuse the jury—

"*Juror #6:* The manslaughter charge, I'd like to get more on that, I didn't quite understand it. Is it considered self-defense?

"*The Court:* You are requesting that the manslaughter be read again?

"*Juror #6:* I didn't understand.

"*The Court:* With the self-defense charge you want to know if self-defense would prohibit manslaughter? Is that a defense against manslaughter?

"*Juror #6:* I want to know is that voluntary manslaughter or is voluntary manslaughter, would that be self-defense?

"*The Court:* It is a crime that I have mentioned here today.

"*Juror #6:* But manslaughter, I didn't get the understanding of it.

"*The Court:* I think, that perhaps each one of you may have a question, but I think what you should do is go in the jury room and begin your deliberations after we exclude the thirteenth juror. Select your foreman, as I have advised you and then begin your deliberations, and rely on the memories of the other jurors. I'm sure that most of the jurors will be able to answer questions of each other and this is what you should do. You should review, also, the entire law on each charge and your memories may serve you well when you get back to the jury room and it is refreshed by the other jurors.

"Now, at this time we're going to exclude the thirteenth juror."

Defense counsel objected, indicating to the court that the instructions given were incomplete and did not include several of defendant's requests to

charge.[2]

It is defendant's theory that the court's refusal to clarify an inquiry from juror #6 regarding manslaughter and self-defense constituted an abdication of its duty to provide the jury with an adequate explanation of the law. Where confusion is expressed by a juror, it is incumbent upon the court to guide the jury by providing a "lucid statement of the relevant legal criteria". *Bollenbach v United States,* 326 US 607, 612; 66 S Ct 402; 90 L Ed 350 (1946). In failing to properly explain the law, it is contended that the court denied defendant his right to a fair trial guaranteed by the Sixth and Fourteenth Amendments of the Constitution of the United States.

The people counter with the general proposition that the decision to provide additional instructions at the request of the jury rests within the sound discretion of the trial court, citing *People v Heard,* 388 Mich 182; 200 NW2d 73 (1972). Only a clear abuse of discretion entitles defendant to a new trial. *People v Charles O Williams,* 386 Mich 565; 194 NW2d 337 (1965). The people consider the instructions adequate and the verdict of second degree fair and reasonable.

Examination of the record persuades us that the court's instructions did not accurately provide the jury with sufficient understanding of the elements comprising the possible verdicts. It is most probable that the jury failed to perceive the distinction

[2] Defendant requested instructions on the following points: the burden of establishing that the death did *not* result from defendant's exercise of self-defense rests with the prosecution; the circumstances surrounding the theory of self-defense must be viewed from the standpoint of the accused; a finding by the jury that the weapon discharged accidentally requires a verdict of not guilty; a verdict of first-degree murder requires that the killing be committed with premeditation and malice under circumstances not amounting to self-defense.

between first-degree murder, second-degree murder, and manslaughter. The court instructed:

"Now, in this case the People claim that the defendant is guilty of murder in the first degree. What constitutes murder in the first degree? Our statute in part defines it as follows: All murder which shall be perpetrated by means of poison or lying in wait or any other kind of willful, deliberate and premeditated killing should be murder in the first degree.

"A difference between murder in the first degree and murder in the second degree is this: Murder in the first degree is a killing done willfully and with premeditation, while murder in the second degree the element of premeditation is absent. To convict the respondent of first degree murder, it must appear that the killing was willful and premeditated. It is not necessary that any period of time should have elapsed between the forming of such intentions and the firing of the shot which killed the deceased, provided, the shot was premeditated and the respondent acted willfully.

"On the other hand, if the killing was done under a sudden impulse without premeditation or previously informed intention, the offense should be murder in the second degree. So, the difference between the two offenses is that murder in the first degree the element is present and in second degree it is not.

"Now, I charge that if you find, if at any time before the fatal shot was fired the respondent had murder in his mind and intended murder, to decide to carry it out —to carry out his intentions by willfully and deliberately pulling the trigger to kill Herman Willas *[sic]*, premeditation was committed."

While the first three paragraphs indicate that the absence of premeditation distinguishes second from first-degree murder, the final paragraph containing the formal charge obfuscates the difference rendering the two possible verdicts indistinguishable.

This paragraph, as it appears, suggests that the element of premeditation is present where the

defendant intended murder and decided to carry out this intention by willfully and deliberately pulling the trigger of the weapon to kill the deceased. Without embarking upon a lengthy analysis of premeditation and deliberation and their concomitant subtleties, suffice it to say that the two may be found to exist by the jury when a thought process, undisturbed by hot blood and involving reflection upon a planned course of conduct fully measuring and evaluating the consequences of a killing, is found to have been formed in the mind of the defendant.[3] The jury was not so instructed and could not appreciate the distinction between first and second-degree murder.

Also considered was the offense of manslaughter, and it was at this point in the jury instructions that the more grievous error occurred. The court charged:

"Now, below murder in the second degree is the crime of manslaughter. Manslaughter differs from the crime of murder, in that it is not the result of malice.

"I charge you *as a matter of law* that where one uses a deadly weapon without justification, without regard of human life, amounting to malice, *I charge you, if a man kills another suddenly without any warning, where a deadly weapon is used the law implies malice and the killing is murder.* If you are convinced beyond a reasonable doubt that the respondent killed Herman Willas *[sic]* as a result of cruel or wickedness or of a wickedness disposition, the crime would be murder or what would be murder in the first degree, and without premeditation it would be murder of the second degree.

"Manslaughter is the killing of one person by another without malice expressed or implied, either in the doing of some unlawful act or in the doing of some act that

---

[3] A thorough discussion of the elements comprising first and second-degree murder appear in *Austin v United States,* 127 US App DC 180; 382 F2d 129 (1967), and *People v Morrin,* 31 Mich App 301; 187 NW2d 434 (1971).

cannot but attend with the manifest of some human being or be of such a nature that it cannot be done without the manifest hazards of life. It need not be necessary to show there was *any malice* intentions on the part of the respondent to kill Herman Willas *[sic]."* (Emphasis supplied.)

This portion of the instructions effectively eliminated the verdict of manslaughter from the jury's consideration. The court charged *as a matter of law* that the use of a deadly weapon *implies* malice. The jury was left with no alternative other than to logically deduce that since a deadly weapon was used, the defendant must be guilty of murder. The law does not imply malice where a deadly weapon is used. Michigan has long ago considered malice a permissible inference to be drawn by the jury rather than a presumption of law. Justice CHRISTIANCY stated in *Maher v People,* 10 Mich 212, 218 (1862):

"To give the homicide the legal character of murder, all the authorities agree that it must have been perpetrated with malice prepense or aforethought. This malice is just as essential an ingredient of the offense as the act which causes the death; without the concurrence of both, the crime can not exist; and, as every man is presumed innocent of the offense with which he is charged till he is proved to be guilty, this presumption must apply equally to both ingredients of the offense—to the malice as well as to the killing. Hence, though the principle seems to have been sometimes overlooked, the burden of proof, as to each, rests equally upon the prosecution, though the one may admit and require more direct proof than the other; malice, in most cases, not being susceptible of direct proof, but to be established by inferences more or less strong, to be drawn from the facts and circumstances connected with the killing, and which indicate the disposition or state of mind with which it was done. It is for the court to define the legal import of the term,

malice aforethought, or, in other words, that state or disposition of mind which constitutes it; but the question whether it existed or not, *in the particular instance,* would, upon principle, seem to be as clearly a question of fact for the jury, as any other fact in the cause, and that they must give such weight to the various facts and circumstances accompanying the act, or in any way bearing upon the question, as in their judgment, they deserve: and that the court have *[sic]* no right to withdraw the question from the jury by assuming to draw the proper inferences from the whole, or any part of, the facts proved, as presumption of law. If courts could do this, juries might be required to find the fact of malice where they were satisfied from the whole evidence it did not exist." (Emphasis by Court.)

This continues to be the law in Michigan today. See, also, *People v Bourne,* 385 Mich 170; 188 NW2d 573 (1971).

Having established that malice was erroneously categorized as a presumption of law rather than a permissible inference, we next consider the court's refusal to clarify the charge of manslaughter. Only recently has this Court reaffirmed the responsibility of the trial judge to insure that cases are presented to the jury in an intelligent manner " 'so that they may have a clear and correct understanding of what it is they áre to decide' ".[4] An erroneous or misleading charge denies defendant the right to have a properly instructed jury pass upon the evidence.[5] On three different occasions juror #6 indicated to the court that he did not understand the charge of manslaughter nor did he appreciate the difference between manslaughter and self-defense. No attempt was made to distinguish between voluntary and involuntary man-

[4] *People v Townes,* 391 Mich 578, 587; 218 NW2d 136 (1974), quoting from *People v Murray,* 72 Mich 10, 16; 40 NW 29 (1888).

[5] *People v Visel,* 275 Mich 77; 265 NW 781 (1936); *People v MacPherson,* 323 Mich 438; 35 NW2d 376 (1949).

slaughter. Instead, juror #6 was asked to rely upon the memories of other jurors and their ability to clarify the questions raised. We appreciate the potential danger that deliberations may begin in open court when the court attempts to clarify questions of the jury. We also recognize the necessity of balancing this possibility against jurors having to deliberate without fully understanding the elements which comprise the possible verdicts. Review of the instructions *in toto* persuades us that the latter consideration must prevail where the chargeable offenses are not adequately defined and the essential elements necessary to establish them are either absent or presented in a manner which creates doubt as to whether the jury understood and appreciated the court's instructions.[6]

It is also argued that defendant was denied a fair trial because the jury was instructed that the people *had produced* evidence proving defendant's guilt beyond a reasonable doubt. In so doing, the presumption of innocence was removed and the defendant was denied his right to a fair trial. The court instructed:

"The Burden in this case is upon the People to produce such evidence as convinces your minds beyond a reasonable doubt of the charge made by the People. This defendant is presumed to be innocent, and that presumption abides and remains with him throughout the trial of this case until it shall have been removed by evidence produced by the People, which convinces your mind that he is guilty beyond a reasonable doubt.

"*In this charge I may say the People produced warrant conviction evidence which convinces you beyond a reasonable doubt.* By a reasonable doubt, is a fair doubt, just what the words imply. It is such a doubt that after a careful review of all the testimony you cannot say you have an abiding conviction to a moral certainty.—It is

---

[6] *People v Liggett,* 378 Mich 706; 148 NW2d 784 (1967).

such a doubt that after a careful review of all the testimony you can say you have an abiding conviction to a moral certainty. It does not mean a fictitious doubt or a possible doubt which you can raise about anything and everything, but a reasonable doubt, a fair doubt, or a doubt which would cause you to hesitate in the ordinary affairs of life." (Emphasis added.)

Taken in context, the sentence, "In this charge I may say the People produced warrant conviction evidence which convinces you beyond a reasonable doubt" must be considered either a misstatement by the trial judge or an error attributable to the court reporter. Defendant, however, interprets this to mean that the people did in fact produce evidence which proved his guilt beyond a reasonable doubt. Considering the subsequent instructions which elaborate upon the meaning of reasonable doubt, it appears obvious that intelligibly stated and transcribed, the sentence would read, "The people must produce, to warrant conviction, evidence which convinces you beyond a reasonable doubt." No objection was raised. We are convinced that the complete instructions regarding reasonable doubt were adequately set forth and the defendant was not prejudiced.

Reversed and remanded for a new trial.

T. M. Kavanagh, C. J., and T. G. Kavanagh, Swainson, Levin, and M. S. Coleman, JJ., concurred with J. W. Fitzgerald, J.

Williams, J. (concurring). My Brother J. W. Fitzgerald has ably pinpointed the error in the trial court's failure to grant a juror's request for clarification regarding the charge of manslaughter and instructions relating to self-defense. I concur fully with his opinion except for his conclusions

relevant to the portion of the court's "reasonable doubt" instruction as follows:

"In this charge I may say the People produced warrant conviction evidence which convinces you beyond a reasonable doubt."

With my Brother J. W. FITZGERALD, I agree that in all likelihood this instruction represents misstatement by the trial judge or an error attributable to the court reporter. However, I do not believe that we are warranted, with so serious an error involved, in rewriting this instruction. Instead, it ought to have been remanded to the trial court to check its accuracy.

If an accurate transcription, I believe this misstatement, on its own, presents grounds for reversal. See *People v Clark,* 340 Mich 411; 65 NW2d 717 (1954). However, a decision to remand or reverse on this point is unnecessary in light of the court's disposition of this matter. Accordingly, I concur in my Brother J. W. FITZGERALD's reversal and remand for new trial.