# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

STEVEN JOSEPH MCINTYRE,

      Defendant-Appellant.

UNPUBLISHED
January 23, 2018

No. 333283
St. Clair Circuit Court
LC No. 16-000316-FC

Before: TALBOT, C.J., and MURRAY and O'BRIEN, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of armed robbery, MCL 750.529, and first-degree home invasion, MCL 750.110a(2). The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to consecutive sentences of 23 to 40 years' imprisonment for the armed robbery conviction and 10 to 30 years' imprisonment for the first-degree home invasion conviction. We affirm.

## I. DEFENDANT'S BRIEF ON APPEAL

### A. CLARIFYING INSTRUCTION

Defendant first argues that the trial court erred by accepting the jury's verdict before responding to a jury note expressing confusion over a key element of armed robbery. "In order to preserve an error in the giving or failure to give jury instructions, a party must make a specific objection on the record." *People v Fletcher*, 260 Mich App 531, 558; 679 NW2d 127 (2004). Defendant did not object to the trial court's decision to receive the jury's verdict before providing a clarifying instruction in response to the jury's question. Therefore, this issue is unpreserved. As this Court stated in *People v Everett*, 318 Mich App 511, 526-527; 899 NW2d 94 (2017):

> This Court reviews unpreserved challenges to jury instructions for plain error affecting a party's substantial rights. To avoid forfeiture of an unpreserved claim, the defendant bears the burden of establishing that: (1) error occurred, (2) the error was plain, i.e., clear or obvious, and (3) the plain error affected substantial rights. Reversal is warranted only when the plain, unpreserved error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity, or public reputation of the judicial proceedings

-1-

independent of the defendant's innocence. [Citations and quotation marks omitted.]

Defendant was charged with armed robbery. The trial court instructed the jury, in pertinent part, that defendant must have

> possessed a weapon designed to be dangerous and capable of causing death or serious injury, or possessed any other object capable of causing death or serious injury that the Defendant used as a weapon, or possessed any object used or fashioned in a manner to lead the person who was present to reasonably believe that it was a dangerous weapon, or that the Defendant represented orally or otherwise that he was in the . . . possession of a weapon.

During deliberations, the jury asked a question about the definition of a dangerous weapon and whether a fist could be considered a dangerous weapon. While a responsive instruction was being prepared, but before an instruction was provided, the jury announced that it had reached a verdict. The trial court impaneled the jury and received the verdict, without objection. Defendant now argues that the trial court erred by receiving the jury's verdict before providing a clarifying instruction, as there was a serious danger that one or more jurors did not believe that he was armed with a knife, and voted to convict him of armed robbery because they believed that his fists could qualify as a dangerous weapon.

"A criminal defendant is entitled to have a properly instructed jury consider the evidence against him. Accordingly, jury instructions must include all the elements of the charged offenses and any material issues, defenses, and theories that are supported by the evidence." *Everett*, 318 Mich App at 527 (citations and quotation marks omitted). "Where confusion is expressed by a juror, it is incumbent upon the court to guide the jury by providing a 'lucid statement of the relevant legal criteria.' " *People v Martin*, 392 Mich 553, 558; 221 NW2d 336 (1974), overruled in part on other grounds *People v Woods*, 416 Mich 581 (1982) (citation omitted). However, "the decision to provide additional instructions at the request of the jury rests within the sound discretion of the trial court[.]" *Id*.

> [A] defendant is guilty of armed robbery if he engages in conduct under MCL 750.530 and (1) he actually possesses a dangerous weapon, *or* (2) he possesses some article that would lead a person to reasonably believe that the article is a dangerous weapon, *or* (3) he orally represents that he possesses a dangerous weapon, *or* (4) he otherwise represents that he possesses a dangerous weapon. [*People v Henry*, 315 Mich App 130, 137; 889 NW2d 1 (2016).]

This Court has concluded, with regard to the crime of felonious assault, that "a defendant's teeth are not dangerous weapons for the same reasons that his bare hands are not." *People v Malkowski*, 198 Mich App 610, 614; 499 NW2d 450 (1993), overruled in part on other grounds *People v Edgett*, 220 Mich App 686 (1996). Given the above, defendant is likely correct that his

fists would not qualify as a dangerous weapon for purposes of armed robbery.[1] Nonetheless, defendant has not established that it was plain error to accept the jury's verdict before providing a clarifying instruction.

The trial court was preparing to respond to the jury's request, but the jury announced that it had reached a verdict before a response could be provided. It was reasonable for the court to conclude that the jury had resolved its confusion and no longer required clarification in order to reach a verdict. Defendant merely speculates that some jurors voted to convict him of armed robbery based on an erroneous belief that his fists could qualify as a dangerous weapon. It is equally possible that the jury unanimously agreed that defendant was armed with a knife, as the victim testified, and found that a knife constituted "a weapon designed to be dangerous and capable of causing death or serious injury," and thus it was unnecessary to wait for further instructions.

## B. ACCOMPLICE INSTRUCTIONS

Next, defendant argues that he was denied a fair trial by the trial court's failure to give an undisputed accomplice instruction and cautionary instruction regarding the use of accomplice testimony. Because defendant did not request these instructions in the trial court, this issue is unpreserved. *Fletcher*, 260 Mich App at 558. As stated above, "[t]his Court reviews unpreserved challenges to jury instructions for plain error affecting a party's substantial rights." *Everett*, 318 Mich App at 526 (citation and quotation marks omitted). Moreover, we agree with the prosecution that this issue is waived because defendant's trial counsel clearly expressed satisfaction with the trial court's instructions. Trial counsel made one objection to the instructions, which did not relate to the issue of accomplice instructions, and counsel expressed satisfaction with the trial court's handling of specific issues. Given trial counsel's statement that he had no other objections to the instructions, any error is waived. *People v Kowalski*, 489 Mich 488, 504-505; 803 NW2d 200 (2011). Even if the issue is considered, however, defendant is not entitled to relief.

Defendant argues that the trial court should have provided M Crim JI 5.4, which is titled "Witness as Undisputed Accomplice," and M Crim JI 5.6, which is titled "Cautionary Instruction Regarding Accomplice Testimony," to the jury. M Crim JI 5.4 provides:

(1) [*Name witness*] says [he / she] took part in the crime that the defendant is charged with committing.

[*Choose as many of the following as apply:*]

---

[1] The "Use Note" for M Crim JI 18.1, "Armed Robbery," directs the reader to M Crim JI 17.10 for a definition of "dangerous weapon." Chapter 17 relates to the crime of assault. Thus, this Court's interpretation of the term "dangerous weapon" with regard to the crime of assault is relevant. M Crim JI 17.10 merely defines a dangerous weapon as "any object that is used in a way that is likely to cause serious physical injury or death."

-3-

[(a) (*Name witness*) has already been convicted of charges arising out of the commission of that crime.]

[(b) The evidence clearly shows that (*name witness*) is guilty of the same crime the defendant is charged with.]

[(c) (*Name witness*) has been promised that (he / she) will not be prosecuted for the crime the defendant is charged with committing based upon any information derived directly or indirectly from the witness's truthful testimony. The witness may be prosecuted if the prosecution obtains additional, independent evidence against the witness.]

[(d) (*Name witness*) has been promised that (he / she) will not be prosecuted for the crime the defendant is charged with committing.]

(2)  Such a witness is called an accomplice.

M Crim JI 5.6 provides:

(1)  You should examine an accomplice's testimony closely and be very careful about accepting it.

(2)  You may think about whether the accomplice's testimony is supported by other evidence, because then it may be more reliable. However, there is nothing wrong with the prosecutor's using an accomplice as a witness. You may convict the defendant based only on an accomplice's testimony if you believe the testimony and it proves the defendant's guilt beyond a reasonable doubt.

(3) When you decide whether you believe an accomplice, consider the following:

(a) Was the accomplice's testimony falsely slanted to make the defendant seem guilty because of the accomplice's own interests, biases, or for some other reason?

(b) Has the accomplice been offered a reward or been promised anything that might lead [him / her] to give false testimony? [*State what the evidence has shown. Enumerate or define reward.*]

(c) Has the accomplice been promised that [he / she] will not be prosecuted, or promised a lighter sentence or allowed to plead guilty to a less serious charge? If so, could this have influenced [his / her] testimony?

[(d) Does the accomplice have a criminal record?]

(4) In general, you should consider an accomplice's testimony more cautiously than you would that of an ordinary witness. You should be sure you have examined it closely before you base a conviction on it.

-4-

The "Use Note" for M Crim JI 5.4 states that this instruction should be followed by M Crim JI 5.6, and that "[t]his charge should be given automatically where the witness has admitted his guilt or has been convicted of the crime, or where the evidence clearly indicates his complicity." The "Use Note" for M Crim JI 5.6 provides that "[t]his cautionary instruction may be used even when the defendant, rather than the prosecutor, calls an accomplice[,]" but should be modified appropriately.

Because the witness at issue, James Paulun, pleaded guilty to second-degree home invasion for his involvement in this case, it would have been appropriate to provide the instructions to the jury, even though the defense called Paulun as a witness. Nonetheless, defendant cannot establish that failure to provide the instructions was plain error, or affected his substantial rights. MCR 2.512(D)(2) provides:

> Pertinent portions of the instructions approved by the Committee on Model Civil Jury Instructions or the Committee on Model Criminal Jury Instructions or a predecessor committee must be given in each action in which jury instructions are given if
>
> (a) they are applicable,
>
> (b) they accurately state the applicable law, and
>
> (c) they are requested by a party.

Additionally, MCL 768.29 provides, in relevant part, that "[t]he failure of the court to instruct on any point of law shall not be ground for setting aside the verdict of the jury unless such instruction is requested by the accused." In this case, defendant did not request the above instructions. Therefore, the trial court was not required to give them.

Our Supreme Court has held that "an unpreserved claim that the court failed to give a cautionary accomplice instruction may be reviewed *only* for plain error that affects substantial rights. An appellate court must follow the . . . plain-error analysis, and only when the defendant satisfies that test is reversal ever appropriate." *People v Young*, 472 Mich 130, 143; 693 NW2d 801 (2005). In *Young*, the Court concluded that the defendant had not met his burden where (1) it was not clear that the alleged accomplices were in fact accomplices, (2) "the prosecution presented evidence of guilt beyond the testimony of the alleged accomplices," (3) "defense counsel thoroughly cross-examined [the alleged accomplices] and challenged their testimony during closing argument, thereby exposing their potential credibility problems to the jury," and (4) the court "instructed the jury to consider any bias, prejudice, or personal interest that a witness might have." *Id*. at 143-144.

Here, it was clear that Paulun was an accomplice based on his testimony that he agreed to plead guilty to the lesser offense of second-degree home invasion for his involvement in this case. See M Crim JI 5.4. Nonetheless, defendant has not established that failure to provide the accomplice instructions affected his substantial rights. The prosecution presented substantial evidence of defendant's guilt beyond the testimony of Paulun, including the victim's testimony and physical evidence of the robbery found in the home from where defendant was taken into custody. Indeed, the prosecution did not call Paulun as a witness. Further, trial counsel

examined Paulun and revealed his potential credibility problems, including his prior inconsistent statements. Trial counsel also argued that Paulun was not credible during his closing argument. Finally, the trial court provided the general instructions regarding witness credibility, and "[j]urors are presumed to follow their instructions[.]" *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003).

## C. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant also argues that he was denied the effective assistance of counsel by his trial counsel's failure to object to the court receiving the jury's verdict before providing a clarifying instruction, and by counsel's failure to request the accomplice instructions.

Because defendant did not raise his ineffective assistance of counsel arguments in a motion for a new trial or request for an evidentiary hearing in the trial court, this Court's review is limited to mistakes apparent from the record. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). As explained in *Heft*:

> A criminal defendant has the fundamental right to effective assistance of counsel. However, it is the defendant's burden to prove that counsel did not provide effective assistance. To prove that defense counsel was not effective, the defendant must show that (1) defense counsel's performance was so deficient that it fell below an objective standard of reasonableness and (2) there is a reasonable probability that defense counsel's deficient performance prejudiced the defendant. The defendant was prejudiced if, but for defense counsel's errors, the result of the proceeding would have been different. [*Id.* at 80-81 (citations omitted).]

It is not apparent from the record why trial counsel did not object to the trial court's acceptance of the jury's verdict before the court provided a clarifying instruction in response to the jury's note. But it was reasonable to conclude that the jury had resolved its confusion on its own, and thus did not require further instruction. Defendant merely speculates that some jurors voted to convict him of armed robbery based on an erroneous belief that his fists could constitute a dangerous weapon. Thus, defendant has not shown a reasonable probability that the result would have been different had counsel objected to the acceptance of the jury's verdict before a clarifying instruction was provided.

Defendant also argues that trial counsel should have requested the undisputed accomplice instruction and the cautionary instruction regarding the use of accomplice testimony. Again, it is not apparent from the record why trial counsel failed to request these instructions, which were supported by the evidence. As the prosecution argues, however, there may have been strategic reasons for counsel's failure to request the instructions, which generally apply when the prosecution uses an accomplice's testimony. Given defendant's claim that he was under duress from Paulun, it is possible that counsel did not want the jury to view Paulun and defendant as "accomplices." Even assuming that failure to request the instructions fell below an object standing of reasonableness, however, defendant cannot establish a reasonable probability that failure to provide the instructions affected the outcome of his trial. As discussed earlier, the prosecution presented evidence of defendant's guilt beyond the testimony of Paulun, trial

counsel thoroughly examined Paulun, and the trial court provided the general instructions regarding witness credibility.

## D. REQUEST TO DISCHARGE ATTORNEY

Defendant argues that the trial court erred by failing to adequately respond to his request to discharge his appointed attorney. "We review a trial court's decision denying substitution of counsel for an abuse of discretion. A trial court abuses its discretion when it issues a decision that falls outside the range of principled outcomes." *People v McFall*, 309 Mich App 377, 382; 873 NW2d 112 (2015) (citations omitted). In *McFall*, this Court stated:

> An indigent defendant is guaranteed the right to counsel; however, he is not entitled to have the attorney of his choice appointed simply by requesting that the attorney originally appointed be replaced. Substitution of counsel is warranted only upon a showing of good cause and where substitution will not unreasonably disrupt the judicial process. Good cause may exist when a legitimate difference of opinion develops between a defendant and his appointed counsel as to a fundamental trial tactic, when there is a destruction of communication and a breakdown in the attorney-client relationship, or when counsel shows a lack of diligence or interest. A mere allegation that a defendant lacks confidence in his or her attorney, unsupported by a substantial reason, does not amount to adequate cause. Likewise, a defendant's general unhappiness with counsel's representation is insufficient. [*Id*. at 382-383 (citations and quotation marks omitted).]

"When a defendant asserts that the defendant's assigned attorney is not adequate or diligent, or is disinterested, the trial court should hear the defendant's claim and, if there is a factual dispute, take testimony and state its findings and conclusion on the record." *People v Strickland*, 293 Mich App 393, 397; 810 NW2d 660 (2011) (citation and quotation marks omitted). "A judge's failure to explore a defendant's claim that his assigned lawyer should be replaced does not necessarily require that a conviction following such error be set aside." *People v Ginther*, 390 Mich 436, 442; 212 NW2d 922 (1973).

At a hearing on April 11, 2016, defendant asked the trial court whether he was entitled to a "duress hearing first." Defendant's trial counsel stated that he had informed defendant that he was not entitled to a separate hearing on the defense of duress, which was an issue for the jury. Defendant then asked if he could fire his attorney, alleging that they had a "break down." The trial court refused to appoint defendant a new lawyer, concluding there was no breakdown and defendant merely wanted to control his attorney.

Defendant argues that the trial court did not give him an opportunity to explain the breakdown in the attorney-client relationship. Based on defendant's request for a "duress hearing" and trial counsel's statements, however, it is apparent that the issue involved defendant's belief that he was entitled to a hearing regarding his defense of duress. Trial counsel, however, correctly explained that the defense of duress was an issue for the jury, see *People v Luther*, 394 Mich 619, 622; 232 NW2d 184 (1975), so there was no "legitimate" difference of opinion regarding a fundamental trial tactic and, thus, no showing of good cause.

*McFall*, 309 Mich App at 383. Accordingly, the trial court did not abuse its discretion by denying defendant's request.

## E. SCORING OF OFFENSE VARIABLE 7

Finally, defendant argues that the trial court erred by assessing 50 points for offense variable (OV) 7 of the sentencing guidelines. In *People v Calloway*, 500 Mich 180, 184; 895 NW2d 165 (2017), our Supreme Court stated:

> A trial court's factual determinations must be supported by a preponderance of the evidence and are reviewed for clear error. Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo. [Citations and quotation marks omitted.]

The scoring of OV 7 is governed by MCL 777.37, which provides:

> Offense variable 7 is aggravated physical abuse. Score offense variable 7 by determining which of the following apply and by assigning the number of points attributable to the 1 that has the highest number of points:
>
> (a) A victim was treated with sadism, torture, excessive brutality, or similarly egregious conduct designed to substantially increase the fear and anxiety a victim suffered during the offense ……………………………………….. 50 points
>
> (b) No victim was treated with sadism, torture, excessive brutality, or similarly egregious conduct designed to substantially increase the fear and anxiety a victim suffered during the offense ……………………………………… 0 points

The trial court found that the fourth category—similarly egregious conduct designed to substantially increase the fear and anxiety a victim suffered during the offense—was applicable. Under that category, "[t]he relevant inquiries are (1) whether the defendant engaged in conduct beyond the minimum required to commit the offense; and, if so, (2) whether the conduct was intended to make a victim's fear or anxiety greater by a considerable amount." *People v Hardy*, 494 Mich 430, 443-444; 835 NW2d 340 (2013).[2] In *Hardy*, the Court concluded that racking a shotgun went beyond the minimum conduct necessary to commit a carjacking, and was designed to substantially increase the fear of the victim. *Id*. at 444-445. In the companion case, the Court concluded that threatening and striking the victims with a sawed-off shotgun went beyond the

---

[2] In *Hardy*, 494 Mich at 443, the Court concluded that the conduct did not have to be "similarly egregious" to "sadism, torture, or excessive brutality," but OV 7 was amended effective January 5, 2016, such that the conduct must be "similarly egregious." See 2015 PA 137. Defendant does not dispute that the conduct in question was "similarly egregious" to sadism, torture, or excessive brutality.

-8-

minimum conduct necessary to commit an armed robbery, and was designed to increase the fear or anxiety of the victims by a considerable amount. *Id*. at 446-448.

The trial court did not err by assessing 50 points for OV 7. A preponderance of the evidence supports the court's finding that defendant's conduct went beyond the minimum conduct necessary to commit an armed robbery or first-degree home invasion. To commit an armed robbery, the defendant must use force or violence against, assault, or put in fear any person who is present at a larceny, and either (1) possess "a dangerous weapon or an article used or fashioned in a manner to lead any person present to reasonably believe the article is a dangerous weapon," or (2) "represent orally or otherwise that he or she is in possession of a dangerous weapon[.]" *Hardy*, 494 Mich at 446 (citation and quotation marks omitted; alteration in original). To commit first-degree home invasion, the defendant must (1) either break and enter a dwelling or enter a dwelling without permission, (2) either intend to commit a felony, larceny, or assault in the dwelling or commit a felony, larceny, or assault at any time while entering, present in, or exiting the dwelling, and (3) either be armed with a dangerous weapon or another person is lawfully present in the dwelling. *People v Baker*, 288 Mich App 378, 384; 792 NW2d 420 (2010). Thus, neither offense required that defendant actually assaulted the victim. To commit armed robbery, defendant could have merely put the victim in fear and, to commit first-degree home invasion, defendant could have merely intended to commit an assault. Accordingly, defendant's conduct in knocking down the victim, hitting her in the face, tying her up, and making her leave her home, went beyond the conduct necessary to commit an armed robbery or first-degree home invasion. It is also reasonable to conclude that defendant intended to increase the victim's fear or anxiety by a considerable amount. As in *Hardy*, 494 Mich at 445, defendant urged the victim's compliance by making her fear death from his violent assaults. Accordingly, there was no error in the trial court's scoring decision.

## II. DEFENDANT'S STANDARD 4 BRIEF

In a pro se brief filed pursuant to Administrative Order 2004-6, Standard 4, defendant raises three additional arguments of ineffective assistance of counsel. Because defendant failed to raise these arguments in a motion for a new trial or request for an evidentiary hearing in the trial court, our review is limited to mistakes apparent from the record. *Heft*, 299 Mich App at 80. We reject each of his arguments.

## A. FAILURE TO CALL AN EXPERT WITNESS

First, defendant argues that trial counsel was ineffective for failing to call an expert witness to testify on his behalf at trial.

> An attorney's decision whether to retain witnesses, including expert witnesses, is a matter of trial strategy. A defendant must meet a heavy burden to overcome the presumption that counsel employed effective trial strategy. In general, the failure to call a witness can constitute ineffective assistance of counsel only when it deprives the defendant of a substantial defense. [*People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009) (citations and quotation marks omitted).]

Defendant argues that an expert could have raised many issues and that an expert's testimony "may have led to a positive outcome" for him. Defendant, however, fails to offer any proof that an expert witness would have testified in the manner he alleges or in any manner favorable to the defense. Accordingly, defendant has not established the necessary factual predicate, and therefore has not established a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different. See *People v Ackerman*, 257 Mich App 434, 455-456; 669 NW2d 818 (2003).

## B. FAILURE TO INVESTIGATE AND CALL LAY WITNESS

Defendant also contends that trial counsel was ineffective for failing to investigate and call defendant's daughter, Sarah McIntyre, as a witness at trial. Again,

> [a]n attorney's decision whether to retain witnesses, including expert witnesses, is a matter of trial strategy. A defendant must meet a heavy burden to overcome the presumption that counsel employed effective trial strategy. In general, the failure to call a witness can constitute ineffective assistance of counsel only when it deprives the defendant of a substantial defense. [*Payne*, 285 Mich App at 190 (citations and quotation marks omitted).]

Defendant argues that Sarah would have provided exculpatory testimony that was critical to support his defense of duress. Defendant has submitted to this Court an affidavit from Sarah averring that she would have testified that (1) Paulun called her and threatened that if she did not give him defendant's valuables, something bad would happen to defendant and someone was going to murder defendant, (2) she felt defendant was in danger and that he was being held hostage, (3) when defendant subsequently called her, he was scared, and (4) defendant's trial counsel called her less than 24 hours before the trial, he was unprepared, and he was unaware of her statement to the police.

It is not apparent from the record why trial counsel did not call Sarah as a witness. Although the decision not to call a witness is presumed to be sound trial strategy, Sarah's affidavit suggests that trial counsel was not prepared for trial and was unaware of her statement to the police until the day before trial. However, defendant has not established a reasonable probability that Sarah's testimony would have affected the outcome of the trial, or that he was deprived of a substantial defense. Defendant was able to present his defense of duress through his own testimony. Moreover, Paulun did not dispute that he called Sarah and tried to force her to give him some items, but he claimed that he did so at the request of defendant. Sarah's proposed testimony would have corroborated Paulun's testimony in this regard, but it would not have refuted Paulun's claim that he acted at defendant's request. The ultimate issue was the credibility of Paulun versus the credibility of defendant. Even if Sarah had testified that she "felt" defendant was in danger and was being held hostage, and that defendant was scared when he called her, such testimony would have added little credence to defendant's theory that he committed the charged offenses under duress, which the jury rejected.

## C. FAILURE TO IMPEACH THE VICTIM WITH PRIOR INCONSISTENT TESTIMONY

Lastly, defendant argues that trial counsel was ineffective for failing to use contradictory testimony to impeach the testimony of the victim.

"[D]ecisions regarding what evidence to present . . . are presumed to be matters of trial strategy, and [this Court] will not second-guess strategic decisions with the benefit of hindsight." *People v Dunigan*, 299 Mich App 579, 589-590; 831 NW2d 243 (2013). However, "[c]ounsel may provide ineffective assistance if counsel unreasonably fails to develop the defendant's defenses by adequately impeaching the witnesses against the defendant." *People v Lane*, 308 Mich App 38, 68; 862 NW2d 446 (2014).

Defendant first argues that trial counsel should have objected to the admission of the duffel bag into evidence, but such an objection would have been futile because items stolen from the victim were found in the bag, and the bag was found in the home from where defendant was taken into custody. So too with respect to whether the duffel bag and knife should have been forensically tested for his DNA, as such a request would have been futile because both the victim and defendant testified that defendant was wearing gloves during the incident. Moreover, the bag was found in the house from where defendant was taken into custody. Thus, whether defendant's DNA was on the bag or knife would have had little evidentiary value. Trial counsel was not ineffective for failing to make a futile objection or request. *People v Unger*, 278 Mich App 210, 256; 749 NW2d 272 (2008).[3]

Affirmed.

/s/ Michael J. Talbot
/s/ Christopher M. Murray
/s/ Colleen A. O'Brien

---

[3]While trial counsel did not impeach the victim regarding the knife or her injury, trial counsel's decision is presumed to be trial strategy and trial counsel did not unreasonably fail to develop defendant's defenses. Trial counsel impeached the victim with her prior testimony on other points, such as whether defendant's phone rang and the length of the incident. There was, however, no actual inconsistency in the victim's testimony regarding the number of times she was struck because the victim also testified at trial that she was struck anywhere from two to four times. With regard to the bone chip, trial counsel elicited testimony at trial that such injury was not diagnosed at the hospital initially, but was later identified by a plastic surgeon after the preliminary examination. Thus, trial counsel was not ineffective.